MARINER'S BANK *versus* GEORGE ABBOTT & *al.*

Parol evidence is not admissible, to vary the meaning of a promissory note. If the promise is jointly and severally to pay, it cannot be shown to be otherwise. But when the creditor makes an arrangement with one of several debtors, extending the time of payment of the debt, it is competent for the others to prove by parol evidence, that they are sureties merely, and that the arrangement was injurious to them.

It is a well settled rule of law, that where the creditor, by a contract with the principal, extends the time of payment, upon a sufficient consideration without the consent of the surety, the latter is discharged.

The mere receipt of interest for a stipulated time, from the principal by the creditor, after the note has become payable, is not sufficient evidence of an agreement to give further credit.

THIS case came before the Court, upon the following exceptions.

This was an action of assumpsit on a joint and several promissory note, signed by John ,Holmes, deceased, and by the defendants, given to the Mariner's Bank, for two hundred dollars, dated October 26, 1841. The note and indorsements thereon, may be referred to.

The note was read to the jury, and here the evidence on the part of the plaintiffs rested.

The defendants then introduced Henry C. Lowell, Esq., as a witness, who testified that about the middle of October,

1841, as near as he could remember, John Holmes, deceased, came to him with a note corresponding in amount to this note, signed by the same parties, payable to the president, directors and company of —————— with a blank for the name of the bank to be inserted — thought this was the same note — that Holmes wanted him to get it discounted at a bank in Thomaston, with which witness was connected, but on inquiry he found it could not be done. Mr. Holmes then wanted money, and he lent him fifty dollars, and he, Holmes, kept the note. In about ten days after, he called and repaid the fifty dollars in bills of the Mariner's bank, and as he thought, in a fifty dollar bill. That the defendants lived in Thomaston, where there were two banks, and it was not shown that they knew it had been discounted at plaintiffs' bank, till suit was commenced.

The next witness for the defendants was S. P. Baker, cashier of Mariner's Bank, who brought with him the discount book of the bank. Mr. Baker testified that the note was regularly discounted at the bank, and he believes was handed in by John H. Sheppard, at that time a director in said bank, and that renewals took place in the manner appearing on the discount book of the bank, a copy of which, so far as respects the note in question, is to be made a part of this case. Who made the several payments he could not tell, nor did he recollect who received the money for the note, and that he had no recollection of having given any notice to either of the signers. Said Baker further stated, that as to principal or surety he knew *nothing* of it otherwise than was apparent upon the note itself.

The deposition of John H. Sheppard of Boston was introduced by defendants, which is made a part of the case, and may be referred to by either party without copy.

Defendants also introduced Arnold Blaney, who testified that Mr. Holmes died in the summer or fall of 1843 ; that commissioners were appointed Jan. 8, 1844 ; that his estate was rendered insolvent the same year ; and it appeared by his testimony or by admission, that the note was not presented to or allowed by the commissioners and a dividend decreed.

Wm. F. Stimpson was called by defendants, who testified, that Mr. Holmes had until his death a coach, horses and a valuable library, which he used as his own.

No evidence was introduced. of any agreement on the part of the bank not to sue at any time after said note came to maturity, unless the renewal of said note be considered ·evidence.

On this evidence, after argument by counsel, WHITMAN C. J., who presided at the trial, instructed the jury, that they .might draw inferences from facts proved, so far as might be ·reasonable ; that they would determine from the evidence in ·the case, whether this was the same note exhibited to Mr. Lowell, and if it was, whether it was presented to the plaintiffs' bank, and discounted for Holmes' benefit, and that the defend-.ants were his sureties thereon, and whether he made the payments and obtained the renewal thereof without any knowledge thereof on the part of the defendants, and that the plaintiffs kept the note without giving the defendants any notice till the ·commission of insolvency on Mr. Holmes' estate was closed .and without presenting the claim to them for allowance ; and if they found these facts in the affirmative, they might find that the defendants never promised. And the jury so found.

To all which ruling and instructions in matter of law, and .admission of testimony, the plaintiffs excepted.

Several indorsements were made upon the note, of which this is one : — " 1842, Sept. 9, Rec'd $1,50 to renew this bal-.ance 87 days from Oct. 12." Another was this : — " 1842, .May 25. Balance renewed 57 days from 21st instant. .100,00."

*E. Foote, Jr.* for the plaintiffs, contended, that as the note ·was perfectly plain and unambiguous in its terms, and was the ·joint and several note of each signer, that parol testimony was inadmissible to change the whole character of the written evi-·dence ; and to alter a joint and several note, and make it read ·as a note signed by principal and sureties. 2 Stark. Ev. 544, .549, 551.

Oral testimony is not admissible to contradict, or materially

affect by way of explanation any written contract. 11 Mass. R. 27 ; 7 Mass. R. 522; 1 *Greenl.* on *Ev.* § 276 ; 4 *East*, 135 ; 3 Greenl. 399; 10 B. & Cr. 578; 6 Hill, 219.

*G. Abbott,* for the defendants, said that although it was true, that on the face of the note all appeared as principals, yet it was competent for the defendants, to show by other evidence the real situation of the signers, and that the present defendants were merely sureties — and that this fact was known to the plaintiffs. *Harris* v. *Brooks,* 2 Pick. 195 ; *Carpenter* v. *King,* 9 Metc. 515.

Such delay of payment, given by the bank to the real principal, as appears in this case, without the assent of the sureties, discharges them. *Guilford* v. *Allen,* 3 Metc. 255 ; *Greely* v. *Dow,* 2 Metc. 176 ; *Hutchinson* v. *Moody,* 18 Maine R. 393 ;. 6 Peters, 250; 8 Pick. 122 ; 23 Maine R. 156.

*Ruggles* argued on the same side.

*Wood,* for the plaintiffs, replied.

The opinion of the Court was drawn up by

WELLS J. — This is an action, upon a promissory note, dated Oct. 26, 1841, signed by the defendants, and another now deceased, insolvent.

The defendants contend they were sureties, and that the bank without their knowledge, upon the application of the principal, extended the time of payment, the interest for the extended time having been paid in advance.

There was nothing on the note, indicating that the defendants were sureties.

The jury were instructed, that they might draw inferences, from facts proved, so far as might be reasonable, that they would determine from the evidence, in the case, whether this was the same note, exhibited to Mr. Lowell, and if it was,. whether it was presented to the plaintiffs' bank, and discounted for his benefit, and that the defendants were his sureties thereon, and whether he made the payments, and obtained the renewal thereof, without any knowledge thereof on the part of the defendants, and that the plaintiffs kept the note, with—

out giving the defendants any notice till the commission of insolvency, on Mr. Holmes' estate was closed, and without presenting the claim to them for allowance, and if they found these facts, in the affirmative, they might find the defendants never promised, and the jury found for the defendants.

It is objected in argument, that Mr. Lowell's testimony was inadmissible, but no objection was made to it, at the trial. So far as it went to show the identity of the note in suit, with that which was exhibited to him, and that the defendants were sureties, it was clearly admissible. The acts of the person desiring to obtain the discount, in relation to the note, tended to show, that he was principal. The loan of the fifty dollars was unimportant, but the payment in bills of the Mariner's Bank, might indicate where, and by whom the money was obtained.

The name of the bank, at which the loan was expected to be obtained, was not inserted in the note, when it was first signed. It was made payable to the president, directors and company of ———. This circumstance evinces, that the defendants did not know, at what bank, the note would be discounted, and that they confided to the holder the power of filling up the blank. They are bound, by such an act of confidence, and the note is obligatory upon the parties. Bayley on Bills, 145 ; *Putnam* v. *Sullivan*, 4 Mass. R. 45.

Where there are two or more promisors, the presumption, it is said, is, that they are equally liable to pay, but this presumption may be rebutted, not only between the debtors themselves, but between them and the creditor. *Harris* v. *Brooks*, 21 Pick. 195. And it is also said, that it is a fact collateral to the contract, and no part of it, showing the relation, in which the promisors stand to each other, and if it can be inquired into, to adjust the relations of the debtors to each other, it can be to determine the relation of the creditor to each debtor, where the fact becomes material to the respective rights. *Carpenter* v. *King*, 9 Metc. 511.

It is quite apparent, that such proof, when introduced, to adjust the rights of the promisors between themselves is collater-

al to the contract, but when it is extended to the rights between them and the promisee, its collateral character disappears. Parol evidence is not admissible to vary the meaning of a promissory note. If the promise is jointly and severally to pay, it cannot be shown to be otherwise. All the promisors apparently stand in the same relation to the promisee, and no one of them would be permitted to show, that he was not a joint and several promisor.

But when the promisee undertakes to engraft some new provision on the note, by an agreement with one of the promisors, the others have a right to object, if they are injured by it. Where the creditor makes an arrangement with one of several debtors, extending the time of payment of the debt, the others, by proving that such arrangement is injurious to them, because they are sureties, do nothing to impair the validity of the original contract, or to vary its terms. The original contract remains in full force and effect. But the right, to engraft the new matter, is defeated by the proof of a relation not exhibited by the note. The testimony, to show that the defendants were sureties, was properly admitted.

It appears to be a well settled rule of law, that where the creditor, by a contract with the principal, extends the time of payment, upon a sufficient consideration, without the consent of the surety, the latter is discharged. *Leavitt* v. *Savage*, 16 Maine R. 72; *Hutchinson* v. *Moody*, 18 Maine R. 393; *Greely* v. *Dow*, 2 Metc. 176; *Gifford* v. *Allen*, 5 Metc. 255.

If such a contract cannot be enforced in law by the principal, it may be in equity, and is therefore prejudicial to the rights of the surety. The surety acquires a legal right, to set up, in defence, those acts between the creditor and principal, which are detrimental to him, and whatever will discharge a surety in equity will be a good defence at law. *Baker* v. *Briggs*, 8 Pick. 122.

But there must be a *contract or agreement* between the creditor and principal. The mere receipt of interest for a stipulated time, from the principal by the creditor, after the note has become payable, it has been decided in this State, is not suffi-

cient evidence of an agreement, to give further credit. *Freeman's Bank* v. *Rollins*, 13 Maine R. 202; *Strafford Bank* v. *Crosby*, 8 Greenl. 191; *Crosby* v. *Wyatt*, 23 Maine R. 157.

A similar doctrine is held in Massachusetts. *Central Bank* v. *Willard*, 17 Pick. 150; *Boston Hat Manufacturing Co.* v. *Messinger*, 2 Pick. 224; *Oxford Bank* v. *Lewis*, 8 Pick. 458; *Blackstone Bank* v. *Hill*, 10 Pick. 129.

But in the case of *Crosby* v. *Wyatt*, 10 N. H. R. 318, the reception of interest in advance was considered as *prima facie evidence* of a binding contract, to delay the time of payment.

It is unnecessary to inquire which rule is the more reasonable, for the law has been so long settled, on this subject, in our State, that it would be unwise to change it.

In the present case, there was no proof of any other agreement on the part of the bank, to extend the time of payment, than what was manifested by the indorsements. But the indorsements on the note in several instances, state the reception of the interest for a renewal of the balance, and the length of time for which it was taken. The language used in one case where the interest was paid, was, "for a renewal, &c." in three others, "to renew the balance, &c.," and in two others, "balance renewed, &c." This language very plainly indicates the intention of the parties, and contains all the essential elements of a contract or agreement, and is sufficient to authorize a jury to find such contract or agreement. It is not a mere naked reception of interest, but an absolute and positive declaration of the purpose, for which it is received, and the precise length of time during which, the payment is extended.

But the note in suit did not indicate, that the defendants were sureties. It was not submitted to the jury to find, whether the plaintiffs, at the times of the extension, knew the defendants were sureties. If they had all been principals, an agreement with one to extend the time, would not have discharged the others. Nothing but a technical release, under

seal, discharging one of several promisors can operate to discharge the others. And a covenant, not to sue for a limited time, can never be pleaded as a release by any one. *Walker* v. *McCulloch*, 4 Greenl. 421. *Shaw* v. *Pratt*, 22 Pick. 305.

If a contract to extend the time of payment would be effectual between the creditor and one of the principals, making it; it could not be obligatory upon the others. Their co-promisor could not engraft such a provision on the original contract without their assent, and to their detriment, and they be held to conform to such new provision. It is the duty of each principal to pay, and an agreement, between one of them and the creditor, cannot affect the others, unless they assent to it, or it is evidently so beneficial to them, that they may be presumed to assent to it.

If the plaintiffs believed the defendants to be principals, they might be well satisfied no hazard would be run, by making the agreement for the enlarged time of payment, although they might be well aware, that a different rule would apply to sureties. There was no designation of the character as sureties, in which the defendants signed the note. The bank ought not to be subjected to loss by this omission; if any one should suffer for it, it should be the defendants. If the bank made the arrangement, with a knowledge, that the defendants were sureties, then the defendants should be discharged, but if it had no knowledge of that fact, and it viewed them in the same light, in which they presented themselves upon the face of the note, and acted towards them as such, and nothing was done, which would discharge them as principals, they should be holden to pay the note.

The inquiry, whether the bank knew the defendants were sureties, was not presented to the jury; it is one of the facts, which should have been found affirmatively, to authorize a verdict for the defendants, who ought not to deprive the bank of its property, by claiming to be treated in a character, different from that, in which they presented themselves.

The instruction, that the jury would determine whether the note was presented to the bank, and discounted for his

(Holmes') benefit, could not be considered as drawing the attention of the jury to the inquiry, whether the plaintiffs knew that the defendants were sureties. It probably was intended to direct the jury to the evidence, to determine whether the note, which was not made payable to any bank, when it was signed, was discounted for those, who were lawfully entitled to receive the money, and not for any one, who had improperly acquired the note.

But if something different was intended, the expression "discounted for his benefit" does not very clearly imply, that Holmes was principal, and the other defendants were sureties. All the defendants were apparently benefited by the discount, and the benefit to one does not exclude the idea of a benefit to all; it does not imply an exclusive benefit to Holmes alone. Principals might make an arrangement, before the discount of the note, or before the bank had paid the money, and the one receiving the money, might have previously paid to the other signers, their portion of it. And the reception of the money by one would not therefore imply, that he was principal, and the others sureties, nor that if discounted for the benefit of one, that it was not also for the benefit of the others.

It is not within our province to determine whether there is sufficient testimony, developed in the case, for us to be satisfied, that the bank knew that the defendants were sureties.

Believing the instruction should have been more clearly expressed, that the jury must find a knowledge on the part of the bank, that the defendants were sureties, in addition to the other material facts, before they could return a verdict for the defendants, a new trial must be granted.

*Exceptions sustained.*