THE PEOPLE'S BANK v. PEARSONS & BURNABEE AND JOHN H. PRENTISS.

*Principal and surety. Discharge of surety by receiving interest from the principal in advance upon the note after its maturity.*

If the holder of a note, after its maturity, receive from the principal, without the consent of the surety, interest in advance upon it, or so much of it as remains unpaid, with an agreement or understanding to extend the note for the time for which the interest is so paid, the surety is thereby discharged.

The receipt of interest in advance under such circumstances is of itself *prima facie* evidence of a valid contract to extend the time of payment.

If one, in fact a surety, add the word "surety" to his signature to a promissory note, by the terms of the body of which the makers promise "*each one for himself, as principal, to pay, etc.,*" he possesses all the rights of a surety and is discharged by any valid contract for extension of time made between the holder of the note and the principal in fact.

ASSUMPSIT upon a promissory note, dated February 28, 1853, for three hundred dollars, payable in ninety days from date, and signed by the defendants and one Little, who died previous to the commencement of this action.

The defendants Pearsons & Burnabee, made no defence. Prentiss plead the general issue, and the case was tried by jury at the June Term, 1857,—POLAND, J., presiding.

The People's Bank *v.* Pearsons & Burnabee et al.

The plaintiffs read in evidence, the note declared on, the due execution of which was admitted. The note was as follows:

<table>
<tr><td rowspan="2">Three responsible names required, and all notes must be paid promptly, at maturity.</td><td>$300.<br><br>Ninety days from date, we, the subscribers, jointly and severally, each one for himself, as principal, for value received, promise to pay the People's Bank, the sum of three hundred dollars.</td><td>IRASBURGH, 28th Feb. 1853.<br><br><br><br>Signed,<br>WILLIAM W. LITTLE,<br>PEARSON & BURNABEE.<br>JOHN H. PRENTISS, Surety.</td></tr>
</table>

The defendant, Prentiss, then introduced evidence tending to prove that he signed this note merely as surety for the other signers, and that when he signed the note he added the word *surety* after his name, as the same appeared on the note at the trial, and that the note was presented to the plaintiffs and discounted by them to some one of the principals on the note; that it was the general practice and understanding between the bank and their customers that upon notes discounted on ninety days, if one-half was paid at maturity, and the interest paid on the other half for ninety days longer, the bank would wait that time for the payment of the other half. No evidence was given that Prentiss had any knowledge of this usage or custom of the bank.

The defendant Prentiss further proved, that on the 15th of June, 1853, some one of the principals on the note paid to the bank one hundred and fifty dollars, being one-half of the principal, one dollar and ten cents for the interest on the note from the 28th of May to the 15th of June, and two dollars and twenty-five cents for the interest or discount on the remaining half of the note from the 15th of June for ninety days thereafter. It did not appear that there was any express agreement made at the time of this payment for the delay of the balance remaining due on the note; but it was expected and understood, that such delay would be given, from the general understanding and course of business at the bank, and payment of the balance was delayed accordingly. It did not appear that Prentiss knew anything of this payment of one hundred and fifty dollars, or of any arrangement or agreement for delay, or that he in any way assented thereto, or that he knew that the note was not paid until after the death of Little, which took place in October, 1853.

It was also proved by the defendant that Little had attachable property upon which the note could have been secured up to the time of his death, but that his estate was insolvent, and also that Pearsons & Burnabee had attachable property in their possession when the note became due, but that since then they have become insolvent.

It also appeared that the blank form, upon which the note in question was made, was a form kept and used by the bank, and that the particular blank on which this note was written was obtained at the bank. It did not appear that the bank had any knowledge that Prentiss was a surety, except from the addition of the word *surety* to his signature to the note.

Upon these facts, the county court directed a verdict for the plaintiffs for the balance due upon the note, to which the defendant Prentiss excepted.

*T. P. Redfield,* for the defendant Prentiss.

1. Payment of interest in advance is a sufficient *consideration* for the promise to forbear. 2d Am. Lead. Cases, 307 ; *Wheaton* v. *Randall,* 6 N. H., 502 ; *Claremont Bank* v. *Wood,* 10 Vt. 582 ; *Austin* v. *Dorwin,* 21 id. 88.

2. The word *surety* annexed to the name of a signer is notice to the holder of the note that such person is surety merely, and entitles him to be noticed as such. 2d Am. Lead. Cases, 278, 280, 297.

The signer of a written instrument has the right to limit his liability as he sees fit.

3. The note is payable absolutely in *ninety days,* and the note on the margin (which is part of the note) requires it to be paid *" promptly at maturity."*

After the note matured the principal paid one-half the principal and interest up to the 15th of *June*—the time of payment—*and* $2.50 *more.* This, it is admitted, was not paid as a part of the principal to be indorsed on the note ; but was paid in *consideration* of a mutual *understanding*—the forbearance on the balance for *ninety days* from said 15th *June,* 1853.

We submit that the law will always imply that the party receiving the *consideration* is bound to perform the thing for which the

The People's Bank v. Pearsons & Burnabee et al.

consideration was *paid and received.* The plaintiff received the money understanding it was paid for that *purpose.*

The court should have submitted to the jury to enquire whether the money was paid and received with such mutual understanding; if so it was an *agreement.*

The fact that the *two dollars and fifty cents were* received as interest in advance to a *time certain,* to wit: ninety days from the 15th of June, 1853, necessarily implies an agreement to wait *ninety days.* See cases cited above.

*Slade & Edwards,* for the plaintiffs, insisted,

1. That so far as *the plaintiffs* were concerned all the signers of the notes were principals, though *as between themselves* Prentiss might have been merely a surety ; and therefore that the contract for extension of time on the note, if any such were made, would not discharge Prentiss ; and cited *Claremont Bank* v. *Wood,* 10 Vt. 582 ; Story on Promissory notes, sec. 57 ; *Hunt* v. *Adams,* 6 Mass. 519.

2. That the receipt of interest in advance upon a part of the note after its maturity did not constitute a binding contract to delay the collection of the note ; and cited on this point *Hunt* v. *Bridgham,* 2 Pick. 583 ; *Oxford Bank* v. *Lewis,* 8 Pick. 458 ; *Blackstone Bank* v. *Hill,* 10 Pick. 129.

The opinion of the court was delivered by

BENNETT, J.   We think upon this bill of exceptions the county court erred in directing a verdict for the plaintiffs.

It is too well settled to need authority, that if the creditor extends the time of payment by an agreement with the principal, without the assent of the surety, made upon a good and valid consideration, the surety is thereby discharged, both in a court of equity, and a · court of law.   We think the payment of interest *in advance* is a valid consideration to support a promise to give time.   This has been fully settled by the courts of New Hampshire, 6 N. H. 504, 508, *Wheat* v. *Kendall* ; 10 N. H. 164, *Bailey* v. *Adams* ; 10 N. H. 318, *Crosby* v. *Wyatt.*

The sum paid does not extinguish any part of the principal, or interest that may have accrued, but it is specifically to apply to pay interest to accrue in future.

The People's Bank *v.* Pearsons & Burnabee et al.

It has been held by this court, that the payment of usurious interest on a debt, was a sufficient consideration to support a promise to give time; 21 Vt. 38, *Austin* v. *Dorwin*; and it is a very common principle, that a payment on a debt before it becomes due will support such a promise.

The payment of interest in advance on a debt, is precisely of the same character in principle. The interest is to accrue to the creditor on the loan made for a future forbearance. When a debt has fallen due, the creditor may be compelled to receive payment at any time, and this he may not wish to do, and the receiving of interest in advance, and an agreement, by which the loan is to be extended, may well be regarded as a benefit to the creditor, and we think the case not only discloses a valid consideration for a promise to give time, but that the promise itself might well have been inferred from the facts in the bill of exceptions. It may be stated as a general proposition, that a party, receiving the *consideration*, is bound to perform the thing for which the consideration was *paid* and *received*. To the question, why was this interest paid in advance? there can be but one reply. It was to obtain the delay, and for nothing else, and the payment of interest in advance necessarily presupposes that a delay of payment of the principal for the time is to be given, and we think it is a safe proposition to hold, as a general rule, that the reception of interest in advance, upon a note past due, is *prima facie* evidence of a valid contract to give time of payment, and we see no reason why the rule is not applicable to banks, as well as to individuals.

But in the case at bar, the bill of exceptions finds that it was expected and understood that the delay would be given, although there was no *express contract* to that effect.

We have been referred by the plaintiffs' counsel to two cases from the Massachusetts courts, to wit, *Oxford Bank* v. *Lewis*, 8 Pick. 458; and *Blackstone Bank* v. *Hill*, 10 Pick. 129. In both of these cases the court held, that though the interest on a note past due is paid in advance for a given time, yet, there is thereby no implication of a giving of a new credit created, so as to preclude the right to sue at any time, and of course, no discharge of a surety. We apprehend those cases, standing upon that ground, are not in accordance with our decisions, and however much we may respect the decisions of

the Massachusetts court, we can not bring our minds to indorse their soundness.  They were not followed by the New Hampshire court in the case of *Crosby* v. *Wyatt*, 10 N. H. 322; and, although they were cases where the payment of interest was made *in advance* to a bank, yet, we see no good reason why a bank should be an exception to the general rule.

When interest is paid in advance, the purpose for which it is paid is the same, whether paid to a bank or an individual.   In both cases it is done to procure delay, and the result should be the same. Indeed, I do not understand that the cases in Massachusetts proceed upon the ground that banks form an exception.

In regard to the case of *Blackstone Bank* v. *Hill*, in the 10th Pick., it may be said that although the court indorse the case of *Oxford Bank* v. *Lewis*, in the 8th Pick., yet, I apprehend the former case might well stand upon the ground, that though the interest was paid in advance, yet, it was the understanding of the parties, that if the bank should want money, they might collect the note, before the expiration of the credit obtained by the payment of interest, and the giving of time, in that case, seemed to be, on the part of the bank, a matter of courtesy rather than of obligation, and was so understood by the bank and the borrower, at the time of the payment of the interest.

In the present case, there is nothing to show the assent of Prentiss to the giving of time in this particular case.   The bill of exceptions says, no evidence was given to show that Prentiss had any knowledge as to the usage or custom of this bank, as detailed in the exceptions; and if it should be said, that the usage of banks to receive payment in this way of one-half of the loan, and give an extension as to the other half, upon the payment of the interest in advance, is so universal and notorious that it should not be deemed to have escaped the knowledge of those who generally deal with the banks; and that Prentiss, the surety, must be affected by this usage so that his assent to the extension of time should be implied; yet if we concede the law so to be, for the purposes of this trial, still it can not better the plaintiff's case.   The only usage of the bank which is claimed, is to give an extension of time as to one moiety of a note, when the other half is paid at maturity, which was not done in the case at bar, and the principal

debtor could claim nothing under the usage; and of course no assent to an extension of time can be presumed against Prentiss; and his assent must be made out by other evidence, of which the case is destitute.

The form of the promise in the body of the note should not preclude Prentiss from his defence as a surety.

It is true the blank note, as furnished by the bank, reads, "we, the subscribers, jointly and severally, each one for himself, *as principal*, promise to pay, &c.," and if Prentiss had not annexed the word *surety* to his name, under the authority of the case of Claremont Bank v. Wood, 10 Vt. 582, it would be taken that he had waived any defence growing out of his relation as surety. But in this case the defendant Prentiss had the right to sign the note in the manner he did; and this was notice to the bank of the relation in which he stood, and that he claimed the benefit of that relation, and if the bank did not intend he should have all the rights of a surety, they should have rejected the note. The capacity in which Prentiss signed this note becomes a part of it; and it is well settled that upon this note all the signers would be principals as to the bank, without any express promise binding each one *as principal;* and of course these words can have no effect, unless it be to cut off the defence now set up by Prentiss, *by matter of construction* of the contract, as was done in the case of Claremont Bank v. Wood. But the manner, in which this note is signed, precludes the idea that such was the intention of Prentiss; and the plaintiffs and Prentiss were equally bound by the manner in which the note was signed, so far as his rights as a surety are concerned. The judgment is reversed and the cause remanded.