DUNLAP SCOTT, trustee of AMANDA C. SMITH, plaintiff in error, *vs.* WM. O. SAFFOLD, defendant in error.

Judge HARRIS did not preside in this case.

1. The reception of interest in advance on a note is *prima facie* evidence of a binding contract, to forbear and delay the time of payment; and no suit can be maintained against the maker during the period for which the interest has thus been paid, unless liberty to sue be reserved by the agreement of the parties.

2. Where J. gave to C. a promissory note, with S. as an accommodation endorser, due twelve months after date; "interest to be paid annually at 10 per cent., otherwise counted as principal," and when the note fell due, J. gave to C. a new note for the amount of interest on the note in advance for one year at 10 per cent.; and ten months thereafter, J. paid C. said interest note, in consideration that C. would give time to J. until he, C., should return from Europe; and all these arrangements were made without the knowledge or assent of S., the endorser: *Held*, that the giving of such note for legal and usurious interest in advance, and the payment thereof, under the circumstances, was a binding contract on the part of the holder to give time to the maker, and therefore discharged the endorser.

3. A contract to pay money at a subsequent period, with interest to be paid annually, and if the interest be not paid annually, then to become principal is valid; it is neither usurious, unconscionable, nor contrary to public policy; and the Courts will enforce such a contract. If the interest accruing be not paid when due, suit may be maintained to collect it.

Complaint on note. Trial before Judge WM. M. REESE. Morgan Superior Court. September adjourned Term, 1866.

This case was argued at December Term, 1866, of the

Scott, trustee, *vs.* Saffold.

Supreme Court. It was held up on account of the death of Judge Lumpkin, and the incompetency of Judge Harris, from relationship to one of the parties, and argued by brief at December Term, 1867.

It was based upon the following promissory note:

" $4,733.07          MADISON, GA., August 24, 1857.

Twelve months after date I promise to pay to the order of William O. Saffold, forty-seven hundred and thirty-three dollars and fifty-seven cents, interest to be paid annually, at 10 per cent., otherwise counted as principal—value received. David S. Johnson." Endorsed: " W. O. Saffold, C. Campbell." "August 24th, 1858, received note for the interest to the date of August 24th, 1859."

The defendant plead usury; averring that he endorsed the note for accommodation only, and it was on the same day negotiated by the maker, for his own benefit, to John W. Cardwell, in consideration of $4,264.03; these facts were admitted to be true.

For further plea, the defendant averred that without his knowledge, or consent, Cardwell, on the 24th of August, 1858, received from the maker his individual note for $473.30, and for which note said endorsed credit was made, and said Cardwell, in consideration of said note, agreed that he would not sue the maker before the 24th of August, 1859, and that this discharged defendant from liability on the original note.

Plaintiff read the note to the jury and closed.

The maker testified that on the 24th of August, 1857, he borrowed from Cardwell such a sum of money as that, when ten per cent. for twelve months was added to it, and then ten per cent. to that, the gross sum would be $4,733.07; that defendant was only an accommodation security, and knew not of the usury in the loan; that on the 24th August, 1858, witness gave his note, at one day for the interest on $4,733.07 at ten per cent.; that defendant did not consent to, or know of this arrangement; that in May or June, 1859, when Cardwell was about to leave for Europe, witness paid him

26

said interest note, in consideration that he would indulge witness on the original note till Cardwell returned from Europe.

Here defendant rested his case. Plaintiff, in rebuttal, examined John B. Walker and others to show Cardwell's custom as to loaning money, and read the answers of Johnson to a set of interrogatories to show he contradicted himself, but no point was made on this in the bill of exceptions.

It was admitted that Cardwell died in Paris, France, late in the summer, or early in the autumn of 1859, without having returned from Europe.

The testimony closed and argument had, plaintiff's attorneys requested the Court to charge the jury:

1st. That where J. made his note payable to the order of S., at twelve months after date, for $4,733.07, the interest to be paid annually at 10 per cent., otherwise to be counted as principal, and S. and C. endorsed it, and the note was negotiated by J., it is a legal presumption, that it was not the expectation of the endorsers that it would be paid at maturity, that the terms of the note imply the assent of the endorsers to the postponement of its payment from year to year, upon the maker's complying with the conditions as to interest.

2d. That the acceptance by the holder of a sum of money or a note, as interest, in advance, was not the acceptance of a new contract and security for the debt, nor did it deprive the endorsers of any right to order a suit against the maker nor bind the then holder, or any transferee of the note, not to sue before the expiration of the twelve months from the date of the payment.

3d. That when a payment on a note has been made for usurious interest, whether already accrued, or to accrue, and the amount paid is ascertained, it must stand as an ordinary credit at its date; and the entry of such payment proves nothing of an intention or contract between the maker and the holder of the note beyond what is expressed in the writing.

The Court gave the first request with the qualification that

it must be taken in connection with what he should thereafter charge as to the legal import of the note. He refused to charge the 2d and 3d requests, giving as a reason therefor that the acceptance of a sum of money as interest, in advance, was a fact from which the jury might infer that the holder had, in consideration thereof, agreed to wait with for the principal.

After rehearsing the terms of the note the Court stated that it was due 24th August, 1858, and the maker could have been sued after that time if he failed to pay, that it was not true that every promise by a creditor to give time to the principal, without the consent of the security, would discharge the security, but that, to have such effect, the promise must be based on a sufficient consideration. Such promise based on a sufficient consideration not only binds the creditor so that he cannot sue, but he is not obliged to receive any money secured by such agreement, until the time stipulated for has transpired; the debtor is bound so that he cannot pay within the time limited. Time given to the debtor, upon such consideration, without the consent of the security, discharges him. An agreement to pay simple interest may be a sufficient consideration upon a contract to give time, if there is in the contract for time a stipulation by which the debtor secures simple interest to the creditor for the specified time: *ex. gr.*, if the creditor, his note being due, agree with the principal to delay payment for six months, in consideration that the principal pay the interest for that time, the promise to pay the interest under such circumstances would bind the principal to the payment of it for the period agreed upon, and thus secure the creditor a right beyond what he had before, even if the original note with reference to which the promise was made contained an agreement to pay interest; because the debt being due, the principal or security might, before the new promise, or agreement, sue at any time and the original contract, therefore, did not secure the creditor his interest any longer than it pleased the debtor to let the same accrue. A mere promise by the creditor to delay payment to a future time without a promise by the debtor to pay in-

terest, except that contained in the note itself, does not bind the creditor. Ordinarily when a debtor pays interest upon a note in advance he does so for the purpose of procuring delay, and it is generally understood between the parties, when such payment in advance is made, (there being no reservation to the contrary,) that the creditor has no right to call for the debt until the time has elapsed in which so much interest would accrue. Payment of interest in advance is a sufficient consideration for an agreement to give time, which may be inferred from the proof though not expressed. So, also, a note given for interest in advance is a sufficient consideration for an agreement to give time. We may safely say as a general rule that the receipt of interest in advance, or securing the same in advance by a note, is *prima facie* evidence of a binding contract to delay the time of payment, and no suit can be commenced against the debtor during the time for which interest has been paid or secured.

If a security to an obligation which has been delayed by such agreement assents to the arrangement he will be bound by it, but unless it appears by evidence that he did give his assent thereto, he will be thereby wholly discharged.

After applying this charge to the facts of the case, the Court charged at plaintiff's request, that the new contract must be without the consent of the endorser, and to wait till a day certain and be so binding that the holder could be enjoined from suing before that day.

The verdict was for the defendant.

The bill of exceptions assigns as error so much of the charge as authorized the jury to infer a contract for indulgence from the payment of interest in advance on said note after it was due.

JOSHUA HILL, HARVEY & SCOTT, for plaintiff in error.

J. A. BILLUPS, for defendant in error.

WALKER, J.

The general rule as to the liability of a surety is forcibly expressed by this Court in Bethune vs. Dozier, 10th Ga. R., 238. Says Judge Lumpkin, in this case: "The undertaking

of the surety being one *stricti juris*, he can not, either at law or in equity, be bound farther *or otherwise*, than he is by the very terms of his contract." Nor is it of any consequence that the alteration in the contract is' trivial, nor even that it is for the advantage of the surety. *Non in hœc fœdera veni* is an answer in the mouth of the surety from which the obligee can never extricate his case, ib., and numerous cases cited and examined. Says Lord Chancellor Loughborough, in the leading case of Rees vs. Barrington, 2 Vez. 540; " there shall be no transaction with the principal debtor, without acquainting the person who has a great interest in it. The surety only engages to make good the deficiency. It is the clearest and most evident equity, not to carry on any transaction without the privity of him who must necessarily have a concern in every transaction with the principal debtor. You cannot keep him bound and transact his affairs (for they are as much his as your own) without consulting him. You must let him judge whether he will give that indulgence contrary to the nature of his engagement." "It is well settled by a number of decisions, greater, perhaps, than exist on any other point of law, that any act of the creditor, by which he precludes himself from demanding performance of the principal, or entitles the latter to claim an exemption from performance during an appreciable interval of time, however small, will inure as a discharge of the surety." 2 W. & T. Lead. Cas. in Eq. 2 Pt. 380, (Ed. 1852). If the creditor, by agreement with the principal, without the concurrence of the surety, varies the terms of the contract, as by enlarging the time, or does any act by which the surety is injured, and his risk increased, he is discharged. Curon vs. Colbert, 3d Ga. R., 248; Worthan vs. Brewster, 30th Ga. R., 114; Stallings vs. Johnson, 27th Ga. R., 564. In this case the note was due the 24th of August, 1858. No interest was then due. On that day Johnson, the maker, without the assent of Saffold, the endorser, gave his note for one year's interest *to become due* at ten per cent. compounded at that rate. This interest note, including legal and usurious interest compounded, was paid before the interest became

due under an agreement that the holder would wait with the principal until he, the holder, should return from Europe. The payment of this note, including legal and usurious interest, certainly was a valuable consideration. It was not only a *contract* for usurious interest in advance but the *payment* of such interest in advance.

1. Now what was the effect of this payment of interest, in advance? " Where a bond creditor, by agreement with his debtor, takes interest on his debt by anticipation, that will in effect be giving time to the debtor, and will discharge the surety; since a Court of Equity would restrain proceedings on the bond until the expiration of time for which the creditor had received interest on the bond." White vs. Blake, 1 Y. & C. Exch. Cas., 420; 2 W. & T. Lead. Cas. in Eq., 2 Pt. top p. 362, (Ed. 1852). The very idea of payment of interest in advance presupposes that delay of the payment of the principal is to be given for the time. The payment of the interest is the consideration for an agreement implied from the transaction itself if not distinctly expressed, to give time on the principal. The general rule is that the reception of interest in advance upon a note is *prima facie* evidence of a binding contract to forbear and delay the time of payment; and no suit can be maintained against the maker during the period for which the interest has been paid, unless the right to sue be reserved by the agreement of the parties. The payment of the interest in advance is not of itself a contract to delay, but is evidence of such a contract, and while this evidence may be rebutted, yet in the absence of any rebutting evidence it becomes conclusive. Crosby vs. Wyatt, 10th N. H. Rep., 318. There may be cases found conflicting with this rule, but we think this sustained by the better reason and adopt it.

2. The contract between Johnson and Cardwell for forbearance, then, being valid, and made without the assent of Saffold, necessarily released the indorser from liability.

It is insisted, however, that while the general rule may be as here laid down, yet the peculiar phraseology of the note sued on takes this transaction out of the rule. The note is a

Scott, trustee, *vs.* Saffold.

promise to pay, twelve months after date, $4,733.07, interest payable annually at ten per cent., or otherwise counted as principal.  The argument is that as the note contemplates interest to be paid "annually," that there is an authority given by the endorser to the maker and the holder to agree for forbearance.  The difficulty in the way is that there is no authority to pay interest in advance and thereby tie up the hands of the holder from proceeding to collect the note at any time after it fell due.  The contract was that the interest should be paid annually *as it should fall due,* "or otherwise counted as principal."  It was an agreement, in case the note should lie over for a year after it should fall due, that the maker would pay the interest due at the end of the year, and in case of default then such interest, from that time, would become principal and bear interest, without the necessity of giving a new note for the interest.  The interest could in this way be converted into principal as was decided by this Court in Pinckard vs. Ponder, 6th Ga. R., 256. Whether such a contract as this is will be enforced by the Courts was left undecided by the case in 6th Ga.

3. We have looked into the authorities and are satisfied that a contract to pay money at a subsequent period, with interest to be paid annually, and if the interest be not paid annually then the interest to become principal is a valid and binding contract, and will be enforced by the Courts.  It is neither usurious, unconscionable nor contrary to public policy.  If the interest be not paid when due, suit may be maintained to collect it.  Some cases may be found where Courts of Equity have refused to carry into effect such contracts on the ground that they savor of usury; but the weight of modern decisions, as well, perhaps, as of the older ones at law, is in favor of the enforcement of such contracts.  In LaGrange vs. Hamilton, 4 T. R., 612; when a sum of money was due by bond, with quarterly payments, and at the end of each year, the year's interest due was to be added, and the credits then deducted, and the balance to remain as principal, it was held not to be usurious.  This case was carried into the Exchequer Chamber in error, and affirmed.  2

Hen. Bl. Rep., 144. The cases are reviewed in 1 Am. L. C., p. 522, (Ed. 1852), and the annotaters say the better opinion is that an agreement to pay interest on interest is not usurious nor illegal; and that such an agreement made either at or after the time of the original contract will be enforced.

We think the Court charged right in relation to the custom sought to be set up in favor of this private banker or broker.

We are not aware of any authority which will make the habits of dealing of an individual a part of the laws of the land. Under the facts of this case the jury very properly found in favor of the endorser.

Judgment affirmed.