NEW YORK LIFE INSURANCE COMPANY, Appellant, *v.* JOHN CASEY, Respondent, Impleaded with Others.

1. MORTGAGE — ACCEPTANCE OF INTEREST IN ADVANCE PRIMA FACIE, NOT CONCLUSIVE EVIDENCE OF EXTENSION OF TIME OF PAYMENT. A valid extension of the time of payment of a bond and mortgage, such as will discharge one standing in the relation of surety for the payment of the mortgage debt, is not established as matter of law by the mere receipt from the grantee of the premises of interest three days in advance, where there is no other proof of an agreement, express or implied, for such extension, and two and a half days of the three were legal holidays.

2. INSUFFICIENCY OF EVIDENCE TO ESTABLISH AN AGREEMENT FOR A CHANGE IN RATE OF INTEREST WHICH WILL DISCHARGE SURETY. While a valid agreement between the mortgagee and the grantee of the mortgaged premises to change the rate of interest, made without the knowledge or consent of the surety, would operate to discharge him, such an agreement is not established as a matter of law by proof that the mortgagee directed an increase in the rate, which the grantee thereafter volun

tarily paid and the mortgagee received for a short period, when the former rate was restored, in the absence of any other evidence establishing or tending to establish such an agreement.

*New York Life Ins. Co.* v. *Casey,* 81 App. Div. 92, reversed.

(Argued March 31, 1904; decided April 26, 1904.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered July 7, 1903, upon an order reversing as to the respondent herein a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This action was commenced to foreclose a mortgage, executed by the defendant, John Casey, to the plaintiff to secure the payment of his bond for the sum of $24,000, and covering certain real property situated in the city of New York. The bond was to become due on April 5th, 1902, and bore interest at the rate of five per cent per annum, payable on the first days of January and July.

Casey conveyed the mortgaged premises, subject to the mortgage, to one Friedberg; who, in turn, conveyed them to one Nordenschild. In September, 1893, while Nordenschild was the owner of the property, the finance committee of the plaintiff directed that the rate of interest on the bond and mortgage should be increased to six per cent on and after October 1st, 1893. On December 29th, 1893, Nordenschild paid to the plaintiff the interest from July, 1893, to January 1st, 1894, at the rate of five per cent from July to October and at the rate of six per cent from October 1st to January 1st. It is admitted that the increase in the rate of interest and the payment of such increase were made without the knowledge or consent of the defendant Casey. It was, also, admitted that the value of the mortgaged property in 1893 was equal to the amount of the mortgage and accrued interest. On December 15th, 1893, the rate of interest was ordered to be restored to the original rate of five per cent from January 1st, 1894.

The trial court found: "That there was no agreement on the part of the plaintiff to change the rate of interest, or to

extend the time of payment of the bond and mortgage, and that the fact that plaintiff accepted a different rate of interest than that provided in the bond and mortgage does not prove an agreement to change the rate of interest, and that no consideration for such an agreement was shown." Judgment was directed in favor of the plaintiff and that judgment, on appeal to the Appellate Division in the first department, has been reversed as to the defendant Casey. The order of reversal being silent as to its grounds, the determination of that learned court must be presumed to have been upon the law, solely.

*Andrew Hamilton* for appellant. The mere acceptance of interest three days before it was due did not of itself constitute an extension of the mortgage thereby discharging the mortgagor on his bond. (*Scott* v. *Stockwell,* 65 How. Pr. 249 ; *Mack* v. *Anderson,* 66 N. Y. S. R. 836 ; *Cary* v. *White,* 52 N. Y. 142 ; *Thayer* v. *King,* 31 Hun, 437 ; *M. L. Ins. Co.* v. *Davis,* 12 J. & S. 172 ; *Lowman* v. *Yates,* 37 N. Y. 601 ; *Vilas* v. *Jones,* 10 Paige, 76 ; *Draper* v. *Romeyn,* 18 Barb. 166 ; *Olmstead* v. *Latimer,* 158 N. Y. 313 ; *Powers* v. *Silberstein,* 108 N. Y. 169 ; *Schweppel* v. *Shaw,* 3 N. Y. 446 ; *Goldsmith* v. *Brown,* 35 Barb. 484 ; *M. Ins. Co.* v. *Hinman,* 34 Barb. 410.) Assuming that Casey's obligation could only be chargeable with interest at five per cent, even after the mortgage and his bond were past due, then the change in the rate of interest was not made by a valid agreement of binding force and did not discharge him from his obligation on his bond. (*Lowman* v. *Yates,* 37 N. Y. 601 ; *Reynolds* v. *Ward,* 5 Wend. 502 ; *Draper* v. *Romeyn,* 18 Barb. 166 ; *Mack* v. *Anderson,* 66 N. Y. S. R. 836 ; *M. L. Ins. Co.* v. *Stimpson,* 28 App. Div. 544 ; *Olmstead* v. *Latimer,* 158 N. Y. 313 ; *Thayer* v. *King,* 31 Hun, 437 ; *Cary* v. *White,* 52 N. Y. 148 ; *Sanford* v. *Story,* 15 Misc. Rep. 536 ; *Bank for Savings* v. *Webster,* 1 Monthly Law Bull. 70.)

*Jacob Steinhardt* for respondent. The undisputed evidence shows that a valid agreement had been entered into by

the plaintiff, without the knowledge or consent of the defendant John Casey, increasing the rate of interest on the bond and mortgage from five per cent to six per cent. (*Powers* v. *Silberstein*, 108 N. Y. 169; *Brooks* v. *Wright*, 13 Allen, 72; *Kane* v. *Cortesy*, 100 N. Y. 132; *Dodge* v. *Crandall*, 30 N. Y. 294; *Thomson* v. *Poor*, 147 N. Y. 402; *Antisdel* v. *Williamson*, 37 App. Div. 167.) The defendant John Casey was discharged from all liability under his bond and mortgage by the valid agreement increasing the rate of interest from five per cent to six per cent, made without his knowledge or consent. (*Antisdel* v. *Williamson*, 165 N. Y. 372; *Murray* v. *Marshall*, 94 N. Y. 611; *Spencer* v. *Spencer*, 95 N. Y. 353; *Page* v. *Krekey*, 137 N. Y. 307; *Paine* v. *Jones*, 76 N. Y. 274; *Livingston* v. *Moore*, 15 App. Div. 15; *Grant* v. *Smith*, 46 N. Y. 93; *Marsh* v. *Klepper*, 28 Ohio St. 200; *Bangs* v. *Strong*, 7 Hill, 250; *Ducker* v. *Rapp*, 67 N. Y. 464.) The defendant Casey was discharged from all liability under the bond and mortgage in suit by a valid agreement extending the time of the payment of the principal thereof, made without his knowledge or consent. (*McNulty* v. *Hurd*, 86 N. Y. 547; *W. Bank* v. *Truesdell*, 55 Barb. 602; *Blake* v. *White*, 1 Y. & C. 420; *Crosby* v. *Wyatt*, 10 N. H. 318; *Warner* v. *Campbell*, 26 Ill. 282; *N. H. S. Bank* v. *Colcord*, 15 N. H. 119; *N. H. S. Bank* v. *Ela*, 11 N. H. 335; *People's Bank* v. *Pearsons*, 30 Vt. 711; *Hitchcock* v. *Frankelton*, 116 Mich. 487; *Hollingsworth* v. *Tomlinson*, 108 N. C. 245.)

GRAY, J. This appeal presents the question whether the defendant, Casey, standing as surety for the payment of the mortgage debt, was discharged from his liability upon his bond by the transactions, which took place between the plaintiff and Nordenschild. If such was their effect, of course, a judgment for any deficiency arising upon a sale of the mortgaged premises could not be entered against him, as was the case here. The finding of fact by the trial court was that there was no agreement on the part of the plaintiff to

change the rate of interest upon, or to extend the time of payment of, the bond. With respect to so much of the question as turns upon the existence of any agreement by the plaintiff to extend the time of payment, I concur with what was said below by the dissenting justices, through Mr. Justice INGRAHAM, and with what is said by Judge WERNER in his opinion, and I shall not continue that discussion. I agree with the view that there was, in the evidence, sufficient to sustain the finding that no such agreement was made out and, therefore, that it was error for the Appellate Division to reverse upon such a ground. But I am, also, of the opinion that the reversal by the court below cannot be sustained upon the other ground, that there was an agreement to change the rate of interest, whereby Casey's liability was discharged. The finding of fact is to the contrary and to affect its conclusiveness, upon this review by us of the order of the Appellate Division, we have nothing in the findings of the decision of the trial court, unless it be found in the language, that "the fact that plaintiff accepted a different rate of interest than that provided in the bond and mortgage does not prove an agreement to change the rate of interest." It is not pretended that there was any evidence of the making of such an agreement, other than in the action of the plaintiff's finance committee, in ordering an increase in the rate of interest, during the six months' interest period from July to January, to be paid from October 1st, and in the payment by the owner of the mortgaged property of the increased rate for the last three months of that interest period. Does that prove any agreement and, if it should be considered as tending to prove one, what sufficient consideration was there? It is clear that an agreement, which was unenforceable for want of any consideration, would not discharge the surety. The plaintiff did not bind itself to do anything in consideration of receiving an increased interest and the defendant does not appear to have received any benefit. There were no mutual promises disclosed. If Nordenschild chose to pay more than the bond and mortgage obligated him to pay, in the way of

interest, that would not discharge Casey; if there was no valid agreement changing the contractual obligation. The court is not to imply some agreement, merely because there was a consideration, upon which one might have rested. The agreement, which was to affect the principal contract, must be proved clearly. The plaintiff might have covenanted with Nordenschild to extend the time of payment, or might have granted some indulgence, upon such a consideration; but it did not do so and that is what the trial court found as a fact. I am quite unable to agree in the view that the action of the plaintiff's finance committee and the voluntary payment by the debtor, under the circumstances disclosed, furnished the facts for an inference of an agreement. The debtor was not bound to pay at the increased rate for the three months of the interest period and he came under no apparent obligation to pay it thereafter. As matter of fact, the action of the finance committee appears to have been annulled and the fixed contract rate re-established for the ensuing interest period.

For the reasons stated, I think that the reversal of the judgment of the trial court was erroneous and I advise that the judgment of the Appellate Division should be reversed and that the judgment of the Special Term should be affirmed; with costs to the appellant in this court and in the Appellate Division.

Werner, J. (dissenting). Upon this appeal it must be presumed that the judgment entered upon the decision of the trial court was reversed upon the law and not upon the facts. (Code Civ. Pro. Sec. 1338.)

As none of the rulings upon evidence are presented for our consideration, and as the trial court's conclusions of law are clearly supported by the facts found, the only question that survives for our decision is whether any material finding of fact is without evidence to support it. (*Nat. Harrow Co.* v. *Bement & Sons*, 163 N. Y. 505.)

The learned Appellate Division seems to have based its

decision upon two grounds: (1) That the acceptance by the plaintiff of the interest upon the bond and mortgage for the last half of the year 1893, three days before such interest was due, constituted an agreement to extend the time of payment of the mortgage, which extension worked a discharge of the respondent Casey from his liability on the bond. (2) That the receipt by the plaintiff of an increased rate of interest without the knowledge or consent of Casey, was such a variation of the terms of the contract of suretyship assumed by the latter as to accomplish the same result.

In respect to the first question, the trial court found as a fact that there was no agreement on the part of the plaintiff to extend the time of payment of the bond and mortgage. If there was any evidence to sustain this finding the Appellate Division erred in reversing it as a matter of law. It is the settled law of this state that any extension of the mortgage debt by the creditor, without the knowledge or consent of the bondsman, releases the latter to the extent of the value of the land. (*Murray* v. *Marshall*, 94 N. Y. 611; *Antisdel* v. *Williamson*, 165 id. 372.) And this is true although it suspends the right of action but a single day. (*Place* v. *McIlvain*, 38 N. Y. 96, 99; *Ducker* v. *Rapp*, 67 id. 464, 472.) But to effect this result there must be a valid agreement, express or implied, between the creditor and the principal debtor. (*Powers* v. *Silberstein*, 108 N. Y. 169; *Cary* v. *White*, 52 N. Y. 138.)

The facts relating to this question, are that on December 29th, 1893, three days before it was due, the interest on the mortgage was paid to and received by the defendant. In that year December 29th fell on Friday, so that the day of payment was followed by a legal half holiday, one Sunday and a full legal holiday, the latter being the day on which the interest was due. The respondent gave no evidence of any express agreement to extend the time or to forbear the collection of the debt during the days mentioned. The receipt by the plaintiff's auditor of the interest on December 29th is relied upon as of itself constituting an agreement to extend

the time of payment, or to forbear the enforcement of the debt. Upon this subject Brandt on Suretyship (2d ed. 352) says: " The general rule is that the reception of interest in advance upon a note is *prima facie* evidence of a binding contract to forbear and delay the time of payment, and no suit can be maintained against the maker during the period for which the interest has been paid, unless the right to sue is reserved by the agreement of the parties. The payment of interest in advance is not of itself a contract to delay, but is evidence of such contract, and while this evidence may be rebutted, yet in the absence of any rebutting evidence it becomes conclusive." The rule as thus laid down seems to be supported by the great weight of authority in this country. (*Hitchcock* v. *Frackelton*, 116 Mich. 487, 491; *Warner* v. *Campbell*, 26 Ill. 282; *N. H. Savs. Bank* v. *Ela*, 11 N. H. 335; *Same* v. *Colcord*, 15 id. 119, 124; *Crosby* v. *Wyatt*, 10 id. 318; *People's Bank* v. *Pearsons*, 30 Vt. 711; *Batavian Bank* v. *McDonald*, 77 Wis. 486, 500; *Hollingsworth* v. *Tomlinson*, 108 N. C. 245; *Scott* v. *Saffold*, 37 Ga. 384; *First Nat. Bank of Springfield* v. *Leavitt*, 65 Mo. 562; *Am. Nat. Bank* v. *Love*, 62 Mo. App. 378; *Union Bank* v. *McClung*, 9 Humph. [Tenn.] 98.) In some states it is held that the taking of interest in advance is not only *prima facie* evidence of an agreement to forbear, but is conclusive evidence of such an agreement. (*Gardner* v. *Gardner*, 23 S. Car. 588; *Preston* v. *Henning*, 6 Bush [Ky.], 556; *Jarvis* v. *Hyatt*, 43 Ind. 163; *Hamilton* v. *Winterrowd*, Id. 393; *Woodburn* v. *Carter*, 50 id. 376; *Starret* v. *Burkhalter*, 86 id. 439.) In other jurisdictions there has been a disposition to hold that the taking of interest in advance is not evidence of an agreement to extend the time of payment. (*Agricultural Bank* v. *Bishop*, 6 Gray, 317; *Blackstone Bank* v. *Hill*, 10 Pick. 129; *Oxford Bank* v. *Lewis*, 8 id. 458; *Haydenville Savs. Bank* v. *Parsons*, 138 Mass. 53; *Mariner's Bank* v. *Abbott*, 28 Me. 280; *Freeman's Bank* v. *Rollins*, 13 id. 202.)

We think the rule first adverted to and supported by a

great preponderance of authority is just and sound. The taking of interest in advance may properly be regarded as *prima facie* evidence of an agreement to extend the time of payment, which may be rebutted by other facts and circumstances. Applying this rule to the case at bar, it will be seen that only three days intervened between the payment of the interest and the date when it was due. The first was a legal half holiday, the second was a full legal holiday, and the third on which interest was due, was also a legal holiday. Nothing was said about an extension of time, and the circumstances which indicate that there was no intention to extend the time of payment are, to say the least, quite as strong as those relied upon to show that such an intention existed. Taking all the evidence together, we cannot say that there were no circumstances to rebut the presumption arising from the acceptance of the interest by the plaintiff three days in advance. It was, therefore, a question of fact whether such an extension was intended and we think the Appellate Division erred in reversing this finding of fact as a matter of law. The case of *Wakefield Bank* v. *Truesdell* (55 Barb. 602) is in entire accord with our view, for in that case the General Term of the Supreme Court affirmed the decision of a referee who had found that the evidence disclosed an intention on the part of the plaintiff to extend the time of payment.

The second question we are called upon to consider is whether the increase in the rate of interest from five per cent to six per cent for the last three months of the year of 1893, under the direction of the finance committee of the plaintiff, and received and accepted by the plaintiff, was such a variance of the terms of the contract entered into by the defendant Casey on his bond, as to discharge him from any liability thereon. The trial court found that the acceptance by the plaintiff of a different rate of interest than that provided in the bond and mortgage did not prove an agreement to change the rate of interest, and that no consideration for such an agreement was shown. The learned Appellate Division held that the change in the rate constituted a valid, executed agree-

ment to change the rate of interest, which discharged Casey
from his liability. The bond in suit provided that the interest
should be payable semi-annually at five per cent "until the
principal sum be paid." "When the contract provides that
the interest shall be at a specified rate until the principal be
paid, then the contract rate governs until payment of the
principal, or until the contract is merged in a judgment."
(*O'Brien* v. *Young*, 95 N. Y. 428.) If, then, there was a
valid agreement for the alteration of the provisions of the
bond in respect to the rate of interest, by increasing the
amount thereof, a greater burden was placed upon the owner
of the land and the bondsman was thereby discharged. (*Antis-
del* v. *Williamson*, 165 N. Y. 372; *Murray* v. *Marshall*, 94
id. 611; *Page* v. *Krekey*, 137 id. 307; *Paine* v. *Jones*, 76 id.
274.)

It is conceded that the rate of interest was increased by
order of the finance committee of the plaintiff; that the
plaintiff accepted and retained the interest at the increased
rate; and that the then owner of the land paid the increased
rate, thus acquiescing in the change. These facts, we think,
clearly disclose an executed agreement entered into by the
plaintiff with the owner for a change in the rate of interest.
The appellant urges that there was no consideration shown
for such agreement. With the amount of the increased
interest in its coffers, the plaintiff cannot be heard now to say
that there was no consideration for such an agreement. We
think the Appellate Division properly held that the only
inference to be drawn from the facts upon this branch of the
case was that the plaintiff intended to and did change the rate
of interest by increasing it one per cent, and that the owner
of the land acquiesced in such change by paying the increase.
In *Dewey* v. *Reed* (40 Barb. 16) the holder and maker of a
promissory note, by agreement with the maker and without
the knowledge or consent of the surety, changed the note so
that the interest should be payable semi-annually, instead of
at the date of maturity, and it was held such a material altera-
tion as to release the surety. In *Harsh* v. *Klepper* (28 Ohio

St. 200) the interest on a note was increased one per cent, and the surety was exonerated from liability thereby. To the same effect is *Warrington* v. *Early* (2 El. & Bl. 763). The appellant cites the case of *Merritt* v. *Youmans* (21 App. Div. 256) as sustaining his contention, but there the interest was reduced one per cent, instead of being increased, and, as was said in the similar case of *Cambridge Savs. Bank* v. *Hyde* (131 Mass. 77, 79), "if the change in the original contract from its nature is beneficial to the surety, or if it is self-evident that it cannot prejudice him, the surety is not discharged." Citing *Smith* v. *United States* (2 Wall. 219); *Appleton* v. *Parker* (15 Gray, 173); *General Steam Navigation Co.* v. *Rolt* (6 C. B. [N. S.] 550); *Bowmaker* v. *Moore* (7 Price, 223); *Holme* v. *Brunskill* (L. R. [3 Q. B. D.] 495). So far as the cases of *Offutt* v. *Glass* (4 Bush, 486) and *Eaton* v. *Waite* (66 Me. 221) are in conflict with the views herein expressed, we do not deem it wise to follow them.

We think the learned Appellate Division properly reversed the finding of the trial court upon the second ground, as a matter of law, and its reversal should, therefore, be affirmed.

PARKER, Ch. J., HAIGHT and VANN, JJ., concur with GRAY, J.; MARTIN, J., concurs with WERNER, J., and BARTLETT, J., concurs also, on the ground that there was an unlawful extension, and also that there was a valid agreement changing the rate of interest and discharging the surety.

Judgment reversed, etc.