Hubbard v. Ogden.

ELLEN R. HUBBARD v. N. P. OGDEN.

1. PRINCIPAL AND SURETY; *Measure of Surety's Liability.* Where a husband and wife execute a mortgage upon two separate pieces of real estate, one of which belongs to the husband and the other to the wife, and the mortgage is executed for the purpose of securing an individual debt of the husband, *held;* that the wife is the surety of the husband to the extent of her separate property which she mortgages, and that she is entitled, with respect to such property, to all the rights of a surety.

2. IMPLIED CONTRACT; *Payment of Interest in Advance; Extension of Time.* Generally, when a debtor owing money pays his creditor interest on the same in advance, for the use of the money for a period of time over, above, and beyond the time originally agreed upon for the money to become due, and at the time of the payment of the interest no express contract is made as to when the money shall become due or be paid, such prepayment of the interest, and its reception by the creditor, constitute an implied contract between the parties, extending the time for the payment of the money up to the close of the time for which such interest is paid and received.

3. SURETY, *How Released.* An agreement upon sufficient consideration, made between the creditor and principal debtor, extending the time for the payment of the debt, without the knowledge or consent of the surety, releases the surety; and it makes no difference whether the contract is express or implied.

4. TIME OF PAYMENT, *Extended without Consent of Surety; Effect of.* Where a wife mortgages her separate real estate to secure the payment of her husband's debt, and after the debt becomes due the husband pays and the creditor receives interest in advance on the debt for another period of six months, and this is done without the knowledge or consent of the wife, *held,* that said separate property of the wife is released as security for the payment of said debt; and this is true, notwithstanding the fact that there may be a stipulation in the mortgage that the debt shall be-

come due in case certain taxes are not paid when they become due, and that said taxes were not in fact paid when they became due or at any other time; and notwithstanding the fact that there was a certain parol understanding at the time that the mortgage was executed that the debtor might keep the money so long as he desired to do so, upon the condition, however, that said taxes and the interest on the money should be promptly paid at the time they became due, respectively, which was not done.

*Error from Atchison District Court.*

Action brought by *Ogden*, against P. L. Hubbard, and *Ellen R. Hubbard*, on a promissory note and a mortgage by them executed to the plaintiff. At the March Term, 1877, the case was submitted to the court, without a jury, upon the pleadings with the exhibits thereto attached, and upon an agreed statement of the facts of the case. Findings and judgment for the plaintiff. *Ellen R. Hubbard* brings the case to this court.

*W. W. Guthrie*, and *Smith & Solomon*, for plaintiff in error:

The law is so well established, that the payment of interest in advance by a principal, and an extension of the time of payment without the knowledge of a surety, discharges a surety, that we will cite no other authorities upon that point than *Rose v. Williams*, 5 Kas. 483; *Jenness v. Cutler*, 12 Kas. 500. Under the facts in this case, there can be no question, and the trial court correctly found, that the plaintiff in error was a surety, and entitled to all the rights of a surety *in stricto jure*. (*The Bank of Albion v. Burns*, 46 N. Y. 170; *Smith v. Townsend*, 25 N. Y. 479; *Vartie v. Underwood*, 18 Barb. 561; *Loomer v. Wheelright*, 3 Sandf. Ch. 135; *Hawley v. Bradford*, 9 Paige, 200; *Cristner v. Brown*, 16 Iowa, 130.)

The payment of interest in advance by the principal, P. L. Hubbard, had the effect to discharge the surety, E. R. Hubbard. (Brandt on Suretyship, § 305; 16 Iowa, 130; 30 Vt. 70; 26 Ill. 282; 34 Me. 547; 27 Ill. 323; 30 Miss. 432; 43 N. H. 548; 15 Kas. 591.) Receiving interest in advance is *prima facie* evidence of an agreement to extend the time of payment. (50 Ind. 376; 6 Bush, 566; 26 Ill. 282; 10

N. H. 318; 43 Ind. 393; id. 163; 9 Humph. 98; 55 Barb. 602.)

But the trial court, in the last part of the second conclusion of law, makes the remarkable statement that the plaintiff in error covenanted and agreed to keep the taxes paid, and that in the event the same were not paid when due, then the note given by P. L. Hubbard and not signed by the plaintiff in error immediately became due, and that Ogden, defendant in error, could immediately bring suit for the whole amount. This we contend is error. There is no provision in the mortgage which will bear any such construction. The most that could possibly be inferred from its terms is, that the defendant in error could have brought a suit for the amount due either for taxes, interest, or principal. Nowhere does the mortgage contain any provision that, upon the non-payment of any of these, the whole amount becomes due. The language of this mortgage seems to be identical with that in the case of *Penn v. Railway Co.*, 11 Am. Law Reg., p. 581, and *Holden v. Gilbert*, 7 Paige, 208.

The district court says that Ogden had a continued right to bring his action after the taxes became due and unpaid, and at his election the whole amount would become due on the note. Consequently, the same was due whether Ogden elected to avail himself of this forfeiture or not. This proposition is equally as untenable as the other; the most that he could claim would be a mere privilege to bring a suit, and that at his option the same might become due. If this point had anything to do with the case, we should contend that the plaintiff in error could not have paid this debt at any time before November 15th, 1875, and sued her co-defendant for the same, as the note had not under the terms of the new contract become due, and the defendant in error had not elected to declare the same to be due by virtue of any forfeiture; and as this plaintiff was delayed by this extension of time made by defendant, the court will not inquire whether this delay was prejudicial or not.

When the interest was paid in advance, on the 3d day of

September, up to the 15th day of November, 1875, this was
a new contract; and although the note may have become
due, both by the terms of the same and by a forfeiture, still
Ogden could have extended the time of payment; and if he
could after that time have declared the note to be due before
the time expired for which interest was paid, by reason of the
non-payment of taxes, it must have been for some breach of
the contract which occurred after the new contract was made.

*J. C. Greenawalt,* for defendant in error:

The plaintiff in error contends that in this case there was
an extension of the time of the payment of the debt secured
by the mortgage without the *knowledge* of the plaintiff in
error, one of the defendants in the court below.  The evi-
dence fails to disclose any such a state of facts, and the court
below found that no *express agreement* was ever made for the
extension of the time of payment.   Even if we were to assume
for the purposes of this case that Ellen R. Hubbard was only
surety for P. L. Hubbard, and as such entitled to all the
rights of a surety, following the New York decisions (which
we contend do not declare the law), then it would be incum-
bent on plaintiff in error to show that the time of payment
was extended, not only without her knowledge, but without
her consent previously given, or subsequently ratified by her.
If any legal extension of time was given, it must have been
granted under a distinct agreement, and there must be a valid
consideration therefor, and without the consent of the plain-
tiff in error, in order to release her. (12 Kas. 513; 14 Kas.
287; Story on Pr. Notes, § 415, *et seq.;* 1 McLean, 93; 12
Wheat. 554; 4 Bing. 717; 17 Wend. 501; 5 Wend. 501;
5 How., U. S., 206; 17 Pick. 150.)

That the plaintiff in error did consent to the delay in the
collection of said note, is certainly clearly evidenced by the
agreed statement of facts, which shows beyond all controversy
that there was a mutual understanding between all of the
parties to the suit, that the defendants, including the plaintiff
in error, could have the money borrowed so long as the in-

terest and taxes were kept paid; and such being the under-standing, plaintiff in error cannot now claim that the time of payment was extended without her knowledge and consent. There is undoubtedly enough shown to entitle the defendant in error to recover just such a judgment as the district court rendered in his favor, upon the theory of the consent to the extension of the time of payment by the plaintiff in error, even if she had not signed and acknowledged an instrument pledging her separate property, and afterward by failing to comply with the terms to which she had subjected her prop-erty to the payment of the debt of the defendant in error. The district court very properly found that there had been *no extension of time* granted by plaintiff below, for the reason that the defendants had failed to keep the taxes paid, as by the terms of the mortgage they were compelled to do. In order to work an extension of the time of payment, the creditor must do some act by which he would be barred of the right to prosecute his claim against the debtor for the time being. This proposition is too well established to require the citation of authorities.

It is conceded that the defendants in the court below had failed to pay the taxes for the years 1874, 1875 and 1876. Hence, by the terms of the mortgage to which the plaintiff in error was a party, there was a breach of the contract con-tained in said mortgage, on December 21, 1874, and a right of action accrued to the mortgagee at that time, and he had such continuous right of action up to and at the time the suit was instituted; and the mere fact of taking interest could not affect or predjudice his right to enforce his claim against the mortgagors. The note and mortgage must be construed together as the evidence of one transaction, and as one contract. (*Chick v. Willetts*, 2 Kas. 389; *Lender v. Caldwell*, 4 Kas. 348; *Round v. Donnell*, 5 Kas. 56; *Muzzy v. Knight*, 8 Kas. 457; *National Bank v. Peck*, 8 Kas. 662.) That the mortgagee had the right to pay the taxes and include them in his judgment, see *Stanclift v. Norton*, 11 Kas. 222; *Sharp v. Baker*, 11 Kas. 383. And that right exists, even though

the mortgage is silent as to the payment of taxes, as decided in the case above referred to, of *Stanclift v. Norton.*

In the case at bar, the mortgage being the contract between the plaintiff and the defendant in error, and its terms having been violated by the plaintiff in error long before the note became due, a right of action accrued to the defendant in error, which he never surrendered. If the note and mortgage were to be construed as separate contracts, we fail to see how the condition of the plaintiff in error would be better, as the mortgage, being subsequent in time to the note, would control and would fix the liability of the plaintiff in error. (*Chick v. Willetts,* 2 Kas. 388; *Lender v. Caldwell,* 4 Kas. 348.) The argument of counsel for plaintiff in error is predicated upon the assumption that there was an agreement between the defendant in error and P. L. Hubbard, for a valuable consideration, for the extension of the time of payment, without the knowledge and *consent* of Ellen R. Hubbard; and yet this assumption is not founded upon any evidence adduced in the court below, nor upon any finding made by said court, but the evidence and findings of the court are to the contrary.

The opinion of the court was delivered by

VALENTINE, J.: This was an action on a promissory note and a mortgage. The note, with the indorsements thereon, reads as follows:

"$1,500.          ATCHISON, KANSAS, May 15, 1874.

"One year after date, I promise to pay N. P. Ogden, or order, the sum of fifteen hundred dollars, for value received, with interest at the rate of 12 per cent. per annum, semi-annually in advance, until paid.          P. L. HUBBARD."

"Dec. 14, 1874, rec'd on the within, $90."

"Sept. 3, 1875, rec'd on the within, $93."

The mortgage was executed at the same time, by P. L. Hubbard and his wife, Ellen R. Hubbard, as a security for said note. The mortgaged property consisted of a piece of land in Atchison county belonging to P. L. Hubbard, and a lot in the city of Atchison belonging to Mrs. Hubbard. The

mortgage contained, among others, the following stipulations, to wit:

"*This grant* is intended as a *mortgage*, to secure the payment of the sum of fifteen hundred dollars, according to the conditions of a certain promissory note this day executed and delivered by the said P. L. Hubbard, party of the first part, to the said N. P. Ogden, party of the second part; and this conveyance shall be void if such payment be made as herein specified. But if default be made in said payment, or any part thereof, or the interest due thereon, as above provided, or if the taxes and assessments of every nature which are by law made due, are not paid when the same become due, then it shall be lawful for the said party of the second part, his executors, administrators, or assigns, to sell the premises hereby granted, or cause the same to be sold, with all the appurtenances, in the manner prescribed by law, and out of the moneys arising from such sale to retain the amount due for principal, interest, protest fees and damages for the same, with costs and charges of sale, and attorney's fee of five per cent.; and the overplus, if any there be, shall be paid on demand by said party making such sale to the said parties of the first part, their heirs or assigns. And we further waive all benefit of the appraisement law."

The case was submitted to the court below (without a jury) upon the pleadings and exhibits, and upon an agreed statement of the facts of the case. The only questions, however, of any importance, either of law or fact, presented to the court below for its decision, were, whether Mrs. Hubbard, with regard to said lot, was a surety for her husband, and whether the time for the payment of said note had been so extended by Ogden, the holder of the note, as to release Mrs. Hubbard with regard to said lot. Said note was given for money borrowed by P. L. Hubbard of Ogden, and it does not appear that Mrs. Hubbard ever received any of the money, or any benefit therefrom. The interest on said note for the first six months, or from May 15, 1874, to November 15, 1874, was paid at the time the note was given. The interest for the next six months, or from November 15, 1874, to May 15, 1875, was paid on December 14, 1874. No taxes for the year 1874, or for any subsequent year, were paid by either

P. L. Hubbard or Mrs. Hubbard. The note may, therefore, have become due prior to May 15, 1875, because of such non-payment of taxes, but it certainly became due on May 15, 1875, if not before, by reason of its own express terms. It was not paid, however, on that day, nor has it since been paid. Afterward, and on September 3, 1875, Hubbard paid to Ogden $93 on said note, which was paid by Hubbard, and accepted and received by Ogden, as the interest due on said note from May 15, 1875, to November 15, 1875. By this payment, Hubbard paid in advance for the use of the money due on said note for a period of over two months. He paid in advance for its use from September 3, 1875, to November 15, 1875. There was no express agreement made between the parties at any time that the payment of the note should be extended from September 3, 1875, to November 15, 1875, or for any other period of time. This payment was without the knowledge or consent of Mrs. Hubbard. At the time that the note and mortgage were executed, there was a mutual understanding, however, between the parties, that the plaintiff would let the defendants have the money for which the note was given so long as they desired, or so long as the interest and taxes were kept paid in accordance with the terms of the mortgage.

The court below found against Mrs. Hubbard, and announced its conclusions of law as follows:

"*First:* That the defendant Ellen R. Hubbard having mortgaged her separate property to secure the debt of her husband P. L. Hubbard, she is nothing more nor less than a surety, and entitled to all the rights of a surety *in stricto jure.*

"*Second:* That the defendant P. L. Hubbard having paid interest in advance on the note sued on herein, and the plaintiff having received the same, without the knowledge or consent of Ellen R. Hubbard, the surety, so far as the evidence shows, the said payment and reception of interest would have extended the time of payment of said note, and prevented the plaintiff from bringing suit upon said note and mortgage until November 15th, 1875, (the time to which said interest was so paid,) and thereby would have

discharged the surety, E. R. Hubbard, but for the exist-
ence of the following clause in the mortgage: 'This grant is
intended as a mortgage to secure the sum of $1,500, accord-
ing to the conditions of a certain promissory note this day
executed and delivered by the said P. L. Hubbard, party of
the first part, to N. P. Ogden, party of the second part; and
this conveyance shall be null and void if such payment shall
be made as herein specified. But if default be made in such
payment, or any part thereof, or the interest due thereon, as
above provided, or if the taxes or assessments of every
nature which are by law made due and payable, are not
paid when the same become due, then it shall be lawful for
the said party, his heirs, executors, administrators and as-
signs, to sell the premises hereby granted, with all the ap-
purtenances, in the manner prescribed by law, and out of the
moneys arising from such sale to retain the amount due for
principal, interest, protest fees and damages for the same, with
costs and charges of sale, and an attorney-fee of five per cent.;
and the overplus, if any there be, shall be paid on demand,
by the party making the sale, to the party of the first part,
their heirs or assigns. And we further waive all benefits of
the appraisement law.' But that under said clause of said
mortgage, which must be construed with said note as one
contract, and from the continued breach of said clause by the
said E. R. Hubbard by the non-payment of said taxes,
there was no extension of the time of payment of said note,
and the plaintiff had his continued right of action to foreclose
said mortgage and recover upon said note, notwithstanding
said payment of interest.

"*Third:* That the mortgage sued on and signed by E. R.
Hubbard, having the provision therein that the taxes were to
be paid by the mortgagors, and they covenanting therein to
do so, the covenant having been broken by the mortgagor,
E. R. Hubbard, a right of action accrued to the plaintiff
when the covenants were broken, and the fact of the plaintiff
receiving interest in advance did not affect his right to bring
an action to foreclose the mortgage at any time after the cov-
enants to pay taxes were broken.

"*Fourth:* That the plaintiff is entitled to a judgment against
defendant P. L. Hubbard for $2,277, and costs of suit, to
bear twelve per cent. interest from date of judgment.

"*Fifth:* That the plaintiff is entitled to a further order of
foreclosure and sale of all of said mortgaged premises to dis-
charge said judgment and the costs of this action."

We think that the court below was correct in holding that Mrs. Hubbard was a surety of her husband to the extent of her separate property which she mortgaged to Ogden, and that she was entitled (with reference to said separate property) to all the rights of a surety. *Bank of Albion v. Burns*, 46 N. Y. 170, and other cases cited in the brief of plaintiff in error.

*1. Principal and surety; measure of surety's liability.*

We also think that the court below was correct in holding that generally when a debtor owing money pays his creditor interest on the same, in advance, for the use of the same for a period of time over, above and beyond the time originally agreed upon for the money to become due, and at the time of the payment of the interest no express contract is made as to when the money shall become due or be paid, such prepayment of the interest, and its reception by the creditor, constitute an implied contract between the parties extending the time for the payment of the money up to the close of the time for which such interest was paid and received. *People's Bank v. Pearsons*, 30 Vt. 711; *Woodburn v. Carter*, 50 Ind. 376; and other cases cited in the brief of plaintiff in error.

*2. Implied contract; facts constituting.*

We also think that the court below was correct in holding that an agreement upon sufficient consideration, made between the creditor and principal debtor, extending the time for the payment of the debt, without the knowledge or consent of the surety, releases the surety. (*Rose v. Williams*, 5 Kas. 483; *Jenness v. Cutler*, 12 Kas. 500; *Royal v. Lindsay*, 15 Kas. 591.) And it makes no difference whether the contract is express or implied.

*3. Surety; how released.*

But we think the court below erred in holding that the stipulation in the mortgage with reference to the payment of taxes took this case out of the general rule. At the time that said last-mentioned interest was paid, the note was due upon every consideration. It was due because the taxes had not been paid, and it was due by its own express terms, and nothing could have made it due in any higher degree than it then was. This,

*4. Time for payment, extended without consent of surety; effect of.*

of course, all parties knew. Yet the creditor had the power to extend the time of payment if he chose; and taking pay in advance for the use of the money was certainly extending the time for the payment of such money. Taking pay in advance for the use of the money was waiving all previous defaults, and saying to the creditor, "You may continue to use the money for the time for which you have paid."

We think that the court below was correct in taking no notice of the parol understanding of the parties had at the time that the note and mortgage were executed, that Ogden would let the defendants have the money if they desired it, so long as they were not in default in the payment of interest in advance and taxes; for this understanding did not amount to a contract, and the defendants never paid any attention to it, but continually violated it, and had no right to expect anything under it. In fact, it would have been an impossibility under the circumstances of this case for Ogden to have let the defendants keep the money in accordance with the terms of said understanding, after they had made default in the payment of interest and taxes. If we consider that Mrs. Hubbard, as well as Hubbard, agreed to pay said taxes and interest in order to get an extension of time for the payment of said money, then evidently, *by her not paying the same,* she clearly and manifestly showed that *she did not want any extension of time.* But if we consider that she merely assented or consented that Hubbard might pay the taxes and interest, and thereby get an extension of time, then evidently she gave this assent or consent only upon the express condition that said taxes and interest should be promptly paid at the time they respectively became due, and thereby that the debt for which her land was incumbered should be kept within reasonable bounds. But this condition upon which she gave her consent was never fulfilled. The taxes were never paid; and neither the interest on the debt, nor the debt itself, was paid when the same became due. Therefore Mrs. Hubbard's consent, given upon conditions that were never fulfilled, could never have had any operation.

We think the judgment of the court below was correct in all particulars except as to Mrs. Hubbard's separate property, and with reference to that the judgment must be reversed. This cause will be remanded to the court below, with the order that the judgment be modified in accordance with this opinion.

HORTON, C. J., concurring.

BREWER, J., dissenting.