# MARY P. JOHNSON v. FRANKLIN BANK et al., Appellants.

### Division One, March 18, 1903.

1. **Surety: WIFE'S MORTGAGE TO SECURE HUSBAND'S NOTE.** Where a wife gives a deed of trust on her separate property to secure the payment of her husband's note, and neither she nor the property secures any benefit from the loan, her contract is one of suretyship.

2. **Note: EXTENSION: SURETY.** When time is given to the principal debtor by a valid agreement which ties up the hands of the creditor, though it be for only a single day, the surety is discharged.

3. ————: ————: ————: **TAKING COLLATERAL NOTES: BEFORE MATURITY.** Where the wife made a deed of trust to secure the payment of her husband's note given to a bank, and the bank took from the husband a collateral note for the same amount payable in a short time, and at the end of that period surrendered that collateral note and took another for another short period, etc., holding the first note and deed of trust as security for the payment of these collateral notes the taking of the several collateral notes which matured before the maturity of the note secured by the deed of trust, did not have the effect of extending the time of payment of that secured note, nor or tying the hands of the bank, and therefore it did not discharge the surety, that is, the deed of trust. But if the collateral note is made payable on demand, and taken after the maturity of the secured note, the taking of it by the bank amounts to an extension of time to the husband to pay the secured note, and discharges the wife's deed of trust.

4. ————: **DELIVERY AFTER MATURITY.** A note delivered after maturity, is not an overdue note, but one payable on demand.

5. ————: ————: **DEMAND.** Under the Missouri statute (R. S. 1899, sec. 460), demand notes are not deemed payable until presented or payment demanded.

6. ————: ————: ————: **EXTENSION OF COLLATERAL SECURITY NOTE.** The acceptance of the husband's *demand* note after the maturity of another note secured by a deed of trust on the wife's separate lands, which has been held by the common payee of both notes as security for the payment of the husband's unsecured note, amounts to an indefinite extension of time to the husband to pay the secured note, which could only be made definite by making a demand. And if the wife did not consent to the extension, her property was discharged by the bank's taking the demand note. In this case, a note dated February 1st, payable one day after date, but not delivered until February 8th, is held to be a demand note.

7. **Appeal: EQUITY: RIGHT CONCLUSION.** If the result reached by the trial court was correct, in an equity case, although placed upon a wrongful theory, the judgment will be affirmed.

Appeal from St. Louis City Circuit Court.—*Hon D. D. Fisher,* Judge.

AFFIRMED.

*Clinton Rowell, Joseph H. Zumbalen* and *Joseph S. Laurie* for respondent.

The terms of the loan were fixed by the ninety-day collateral note and can not now be varied by parol testimony; or, in other words, it can not be shown by parol evidence that it was the intention of the bank and Mr. Johnson to treat the real estate note as the primary obligation. On the face of the written instrument, Mrs. Johnson's property stands as surety to the ninety-day collateral note, and parol evidence can not be received to contradict or vary the instrument in this case any more than it can in any other case. Hardie v. Wright, 83 Tex. 345; Colebrooke, Collateral Security, sec. 86; Bast v. Bank, 101 U. S. 93. Assuming that said ninety-day note of March 10, 1896, was the primary obligation, and that the real estate note secured by deed of trust upon Mrs. Johnson's property was simply a security for such debt or loan, we insist that said property as surety is discharged from liability for the following reasons: First by the application of the doctrine of novation. It appears from the evidence that upon the maturity of said ninety day note, the bank cancelled and surrendered the same to Johnson, and took from him another obligation for the same amount and payable in ninety days after June 11, 1896, in lieu of the former. Had Mr. Johnson been the owner of the real estate pledged as security for said note, such security would follow the renewal; but such is not the case where the security

belongs, as in this case, to a third party. The effect of such novation, where the security is or belongs to a third person, is to release the security. 32 Am. St. 717; 16 Am. and Eng. Ency. Law (1 Ed.), 862, 873; Bank v. Leavitt, 65 Mo. 562; Hart v. Hudson, 6 Duer 305; Price v. Bank, 124 Ill. 317; White v. Ault, 19 Ga. 551; Burnap v. Nat. Bank, 96 N. Y. 125. Second. By extending the time of payment of the original ninety-day note. Upon the maturity of the ninety-day note of March 10, 1896, the bank had the right, under the collateral agreement thereto attached, in default of payment, at once to proceed to sell the real estate note secured by deed of trust upon Mrs. Johnson's property; and at such juncture it would have been her right and privilege to have intervened for her own protection and paid said note, and thereby to have secured a right of action against her husband for reimbursement. The bank, however, without her knowledge or consent cancelled and surrendered said note and accepted a renewal note from Johnson maturing in ninety days from June 11, 1896. This constitutes a valid and binding extension of time on the loan, by which the bank suspended its right of action against Johnson until the maturity of said renewal note, and deprived Mrs. Johnson of the right she had to pay the first note upon its maturity, and of her consequent right of action against her husband for reimbursement. An extension of time, binding upon the creditor, operates as a discharge of the surety, unless made with the consent of the latter. Bank v. Freund, 80 Mo. App. 657; Colebrooke on Collateral Security, sec. 239; Brandt on Suretyship, sec. 345; Owen v. Bray, 80 Mo. App. 526; Christner v. Brown, 16 Iowa 130; Rowan v. Rifle Co., 33 Conn. 1. Third. By changing the contract or agreement. By the terms of the collateral agreement attached to the ninety day note of March 10, 1896, for the payment of which Mrs. Johnson's property stood as surety, said property was pledged as security not only for the debt evidenced by that note, but also for such other

indebtedness of her husband's to the bank as might exist
at the maturity of said note. The ninety-day note
accepted in renewal of the first note, as well as all the
succeeding renewals, contained a similar agreement,
except that in each case it extended the security for all
of Johnson's indebtedness to the bank which might exist
at the date of the maturity of the note accepted in
renewal. This manifestly enlarged the liability of the
surety and so varied the terms of the original contract
as to destroy its identity and discharge the security.
Bank v. Burns, 46 N. Y. 170; Myers v. Welles, 5 Hill (N.
Y.) 463.

*Paul F. Coste* for appellants.

(1)  By respondent's execution and delivery to the
Franklin Bank of the deed of trust upon her property
to secure her husband's note, upon which she under-
stood the bank would lend him $5,000, for one year from
March 10, 1896, her land, conveyed by said deed of trust
(not she, herself, in point of personal liability), became
surety for the husband's obligation secured by said
deed; and if the bank at no time since said note matured,
by any agreement with Moses P. Johnson, the debtor in
said note, has precluded itself from an immediate en-
forcement of that overdue note under the terms of the
deed of trust, then respondent's land, as surety for the
husband's said note, has never been released. As there
is no evidence of any such extension in the case, the lien
of the deed of trust remains in force. McCollum v.
Boughton, 132 Mo. 601; Wilcox v. Todd, 64 Mo. 388;
Henry v. Sneed, 99 Mo. 407; Barrett v. Davis, 104 Mo.
549; Ins.Co. v.Carson, 31 Mo. 218; Rucker v. Robinson,
38 Mo. 154; McCune v. Belt, 38 Mo. 281; State to use v.
Manning, 55 Mo. 142; Hosea v. Rowley, 57 Mo. 357;
Hemery v. Marksberry, 57 Mo. 399; Nichols v. Douglass,
8 Mo. 499; West v. Brison, 99 Mo. 684; Burrus v. Davis,
67 Mo. App. 210; Owings v. McKenzie, 133 Mo. 323.

(2)  The collateral note of Moses P. Johnson dated February 1, 1899, for $4,400 due one day after date, which Mr. Johnson brought and delivered to the Franklin Bank on February 8, 1899, and which was entered on the books of the bank as received on that day and as taking place of the previous collateral note dated February 25, 1897, for $4,400, due one day after date and matured March 1, 1897 (prior to the maturity of the real estate note, which matured March 10, 1897, or, with grace, March 13, 1897), was an overdue obligation when Johnson delivered it to the bank on February 8, 1899, and therefore did not extend the time of the loan nor preclude the bank from the enforcement of its remedy under the real estate note and deed of trust for a single moment; and, hence, the substitution of that overdue note for another overdue note had no effect whatever upon the unpaid obligation secured by respondent's deed of trust.  Tiedeman on Bills and Notes, chap. 2, p. 36, sec. 26; Powell v. Waters, 8 Cow. 669; Bumpass v. Timms, 3 Sneed 459; Daniel on Negotiable Instruments (4 Ed.), sec. 65; Snaith v. Mingay, 1 Maule & S. 87; Barker v. Sterne, 9 Exch. 684.

MARSHALL, J.—This is a bill in equity to cancel a deed of trust, dated March 10, 1896, covering lot 13 of block 25, of Gamble's second subdivision of Rose Hill, in city block 3825, city of St. Louis, the same being the plaintiff's separate property, securing a note of the same date, for $5,000, made by her husband, payable at one year, to the order of J. L. Hauk, who was a clerk for the defendant bank, and acting for it in the transaction, and to enjoin the sale, assignment or pledge of said note and deed of trust and the foreclosure of the deed of trust.

The gravamen of the plaintiff's case is that her separate property was surety for the payment of her husband's note, and that she and her property have become released and discharged by reason of the bank's

giving time to the husband to pay the debt. There is no controversy in the case as to the facts, the only differences are as to the legal effect of the acts of the parties.

The case made is this: The plaintiff's husband, Moses P. Johnson, desired to borrow five thousand dollars from the bank. He executed a note for that amount payable, at one year, to the order of J. L. Hauk, who had no interest in the matter, and simply acted for the bank. To secure that note the plaintiff executed the deed of trust in question. The only thing that was asked her by the officers of the bank, when she went there to execute the deed of trust, was whether she was willing to give the deed of trust to secure her husband's said note, to which she replied in the affirmative, and thereupon executed the deed of trust, and left the bank. This was on March 10, 1896, and it is conceded that she had no knowledge or information about what was done by her husband and the bank thereafter, until June or July, 1900.

Instead of simply discounting the note that was secured by the deed of trust, the bank caused the husband to make his note for five thousand dollars, payable at ninety days, to the bank, and to pledge the note and deed of trust aforesaid as collateral security for the ninety-day note. The bank says this was a mere matter of form and convenience, and so as to enable the husband to pay the debt before the maturity of his note secured by the deed of trust, and that the note secured by the deed of trust was the primary liability of the husband, and that the taking of the ninety-day note and pledging the note and deed of trust aforesaid as collateral therefor did not have the effect of giving time to the principal nor of releasing the surety, for that, there was no extension of time. On the other hand the plaintiff claims that the ninety-day note was the primary obligation of the husband; that the money was loaned upon that note, and the note and deed of trust aforesaid were only pledged as collateral security and that the debt, therefore, matured in ninety days.

At the maturity of the ninety-day note on June 11, 1896, a new note for ninety days was given, and the note and deed of trust aforesaid were again pledged as collateral security therefor, and the first ninety-day note was marked paid and surrendered. Upon the maturity of the second ninety-day note on September 11, another ninety-day note was given, and the same arrangement pledging the note and deed of trust aforesaid, was made. On October 15, and December 17, 1896, the same arrangement was made, except the note made payable at sixty days. On February 25, 1897, the husband paid six hundred dollars on the note, and a new note was made to the bank for $4,400, payable one day after date, and maturing March 1, 1897, and the note and deed of trust aforesaid were pledged as collateral security. At all said times the husband paid the interest then accrued on the loan. Thus the matter stood until February 8, 1899, when the husband gave the bank a new note for $4,400 dated February 1, 1899, and payable one day after date, and pledged the note and deed of trust aforesaid as collateral security therefor, and the bank surrendered to him the note dated February 25, 1897. The husband at that time paid the interest up to February 1, 1899, and thereafter he paid the interest on the last note aforesaid until October 10, 1900, when he failed. In the meantime, however, the bank obtained from him an agreement that it should have a right to hold any collateral pledged to it for the payment of any indebtedness due by him to the bank.

In June or July, 1900, Mrs. Johnson, desiring to make a loan at a lesser rate of interest, went to the bank to learn the status of the note for which she had given the deed of trust as security, and was informed that the bank held the note and deed of trust as collateral security for whatever sum her husband owed the bank, whether it arose out of the original transaction of

March 10, 1896, or not.   On November 26, 1900, the bank addressed the following notice to the plaintiff:

"Mrs. Mary Johnson,

"5863 Plymouth Ave., City:

"Madam:   Please take notice that we will, in conformity with the collateral agreement of Mr. Moses P. Johnson to his note we hold, proceed to sell on Wednesday, the 28th day of this month, at ten o'clock a. m., at our office, the $5,000 note (balance due $4,400 and interest from October 1, 1900) made by you and secured by D. T. to the highest bidder for cash, and in case we have to purchase the note ourselves, we will then proceed immediately to have the trustee in said D. T. advertise and sell the property under said D. T.

"Very respectfully,

"Franklin Bank,

"Louis Schmidt, Cashier."

Thereupon Mrs. Johnson instituted this suit.

The position taken by the plaintiff both here and in the lower court is "that the original ninety-day note was the primary obligation of Johnson to the bank; that Mrs. Johnson's real estate stood as surety for the payment of that note and was discharged by the extension of the time of payment of said note without her knowledge or consent."   This position concedes that the husband had the power to pledge the original note secured by the deed of trust as collateral security for the first ninety-day note.

The defendant bank has now expressly abandoned any right to hold the deed of trust as security for any indebtedness of the husband to the bank except the original $5,000 note.   And the theory and contention of the bank is that the original $5,000 note secured by the deed of trust is the primary obligation of the husband to the bank, and that the several collateral notes given by the husband to the bank were mere matters of form and convenience and in no manner affected the surety, for that, all of those notes matured before the original note

secured by the deed of trust, and therefore they did not extend the time for the payment of the debt; and that as to the last collateral note, it was dated February 1, 1899, and was payable one day after date, and was not delivered to the bank until February 8, 1899, at which time it was past due, and, hence, it amounted only to the exchange of the overdue collateral note of February 27, 1897, for the overdue collateral note of February 1, 1899, and, therefore, there was no extension of time given the husband for the payment of the debt. The bank further contends that Mrs. Johnson knew nothing whatever about any of these collateral-note transactions, was not a party to them, and, hence, she is not bound thereby, and therefore not released, by virtue of these dealings and acts.

The plaintiff replied to the bank's contention by saying that if such matters be true, then the bank has no right to the original note or deed of trust, because the evidence shows that they were never negotiated to the bank and it has never acquired the title to them, and therefore the deed of trust ought to be cancelled.

The trial court entered judgment for the plaintiff as prayed, and the bank appealed.

## I.

Mrs. Johnson's property was mortgaged to secure the payment of her husband's note for $5,000, payable at one year. Neither she nor her property received any benefit for the loan. Her contract was therefore one of suretyship. [Vogel v. Leichner, 102 Ind. 55; Bank v. Burns, 46 N. Y. 170; Smith v. Townsend, 25 N. Y. 479; Trentman v. Eldridge, 98 Ind. 525; Hubbard v. Ogden, 22 Kans. 363; Wheelwright v. Depeyster, 4 Edwards Ch. 232; Lorimer v. Wheelwright, 3 Sandf. Ch. 155; McCollum v. Boughton, 132 Mo. 601; White v. Smith, 174 Mo. 186.]

This being true, anything that would discharge a

surety who was personally liable, will discharge the property. [Brandt on Suretyship and Guaranty (2 Ed.), sec. 35.]

The general rule is that, "when time is given to the principal debtor by a valid agreement which ties up the hands of the creditor, though it be for a single day, the surety is discharged." [Bank v. Leavitt, 65 Mo. l. c. 565; Stillwell v. Aaron, 69 Mo. l. c. 542, and cas. cit.; White v. Smith, 174 Mo. 186, and cas. cit.] Mrs. Johnson was not a party to any of the collateral notes, nor did she know anything about them until June or July, 1900. Those notes, therefore, are immaterial as to her, except as they may bear upon the question of giving time to her husband, and thereby discharging her property. Her contract was that her property should stand as surety for her husband's note for five thousand dollars, dated March 10, 1896, and payable at one year. She testifies that that was what she agreed with her husband, and with the bank, to do, and that she never gave her husband any authority to do anything else or to make any other contract, and that is what her contract expresses on its face as the sum and nature of her undertaking. The bank knew this before it accepted the deed of trust. Therefore, any arrangement that was made between her husband and the bank, by way of collateral notes, was not material to her or her liability except as it may have extended the time for the payment of the note her property was surety for.

It admits of no question that the taking of the several collateral notes maturing before the maturity of the note that was secured by the deed of trust, did not have the effect of extending the time for the payment of that secured note, nor of tying the hands of the bank as against the right to sue on the secured note, and, therefore, it did not discharge the surety.

But the taking by the bank on February 8, 1899, of the collateral note dated February 1, 1899, payable one day after date, raises quite a different question.

The defendant contends that it only amounted to the bank exchanging one overdue note for another overdue note; that the note of February 1, 1899, did not take effect until it was delivered on February 8, 1899, but that its maturity must be calculated from its date and not from its delivery, and on this theory the bank contends that said note was overdue when it was delivered to the bank, and therefore the time for payment by the husband of the secured note was not extended. In support of this contention the defendant cites Tiedeman on Commercial Paper, ch. 2, sec. 34b, p. 89, and 1 Daniel on Negotiable Instruments (4 Ed.), sec. 65, where the doctrine is announced that a note takes effect from its date and not from its delivery. The textwriters cite in support of the rule announced, the cases of Powell v. Waters, 8 Cowen 669; Bumpass v. Timms, 3 Sneed 459; Snaith v. Mingay, 1 Maule & Selwyn 87, and Barker v. Sterne, 9 Exch. 684. And bearing upon the same question reference may also be had to the following authorities: Woodford v. Dorwin, 3 Vt. 82; Insurance Co. v. Leavenworth, 30 Vt. 11; Wells, Fargo & Co. v. Vansickle, 64 Fed. 944; Collins v. Driscoll, 69 Cal. 550 (where it is held that while that is the rule, still the statute of limitations begins to run from the delivery and not from the date of the note); Story on Prom. Notes (7 Ed.), secs. 56 n, and 48; 1 Parsons on Bills and Notes, p. 49; Carter v. McClintock, 29 Mo. l. c. 468; Welch v. Dameron, 47 Mo. App. l. c. 227; 4 Am. and Eng. Ency. Law (2 Ed.), p. 203.

But an examination of the cases cited shows that in every instance, except one, the delivery was made before the maturity of the note, calculating it from its date, and that in the one exception (Woodford v. Dorwin) the delivery was by a former partner after the maturity and seven years after the dissolution of the partnership, and for that reason the note was declared invalid.

No practical difficulty is encountered under the general rule so laid down, for the delivery in such cases is made before the maturity of the note, however that maturity might be calculated. But here, the maturity, calculated from the date of the note, was before the delivery of the note and, hence, before it became an effective contract. So if the general rule be applied, the solecism would be presented of a contract running its allotted life, and maturing before it had any validity and before it had any life.

No adjudicated case has met or settled this difficulty, and the only text-writer who notices it, is Parsons on Bills and Notes, volume 1, page 49, where, after stating the general rule, the learned author says: "Thus, if a note payable in three months from date, were delivered four months after date, it would be payable on demand."

This must necessarily be the only rational rule to adopt—the only construction that will not involve the manifest incongruity of saying a life can be run before it is begun.

It follows that the note dated February 1, 1899, payable one day after date but not delivered until February 8, 1899, was not an overdue note, but was a note payable on demand and as such it extended the time to the husband for the payment of the secured note until demand, for under the statute (R. S. 1899, sec. 460) demand notes are not deemed payable until presented or demanded, whatever may be the usage or custom here or elsewhere; as to which, see Tiedeman on Commercial Paper, section 296. No demand is shown to have ever been made on the husband to pay that note. Therefore, the acceptance of that note amounted to an indefinite extension of time to the husband to pay the secured note, which could only be made definite by making a demand. The plaintiff never knew of or consented to any extension of time, and therefore her property, as such surety, was discharged by the taking of that note.

The conclusion reached by the circuit court was right, although it was placed upon different reasoning from that here employed, but as the judgment below was for the right party, and as this is a case in equity, the judgment must be affirmed.  All concur.