Brown v. Staab.

No. 21,184.

P. D. BROWN (Revived in the Name of ED F. MADDEN, as Assignee), *Appellant,* V. AMELIA STAAB et al., *Appellees.*

SYLLABUS BY THE COURT.

1. NOTE AND MORTGAGE—*Executed by Minor—Disaffirmance.*    A minor, twenty years old, executed his note and mortgage on real estate due in one year from date.    A year after he attained his majority, he refused a request to sign the note again.    *Held,* that this did not constitute a disaffirmance of the instruments executed during his minority.

2. SAME—*Executed by Minor—Disaffimance not within Reasonable Time after Attaining Majority.*    In an action to foreclose the note and mortgage more than five years after he had attained his majority, he filed an answer pleading his minority at the time of the execution and electing to disaffirm the contract.    *Held,* that the disaffirmance was not within a reasonable time under the provisions of section 6358, General Statutes of 1915, which declare that a minor is bound, not only by contracts for necessaries, but also by his other contracts, unless he disaffirms within a reasonable time after he attains his majority.

3. SAME—*Foreclosure—Amount of Recovery.*    In an action of foreclosure, *held,* on the undisputed facts, plaintiff was entitled to recover the full amount of the notes and mortgages, less payments thereon.

4. SAME—*Joint Mortgagors—Valid Mortgage—Liability of Each.*    Where a father and two sons execute a note and mortgage on their interest in real estate, the life estate of which is vested in the father with remainder over to the sons, and each is liable equally on the note, the three may pledge the estate as an entirety by their joint mortgage.

Appeal from Ellis district court; JACOB C. RUPPENTHAL, judge.    Opinion filed November 9, 1918.    Reversed.

*C. M. Holmquist, A. D. Gilkeson,* both of Hays, *Lee Monroe, James A. McClure,* and *C. M. Monroe,* all of Topeka, for the appellant.

*J. P. Shutts,* and *E. A. Rea,* both of Hays, for the appellees.

The opinion of the court was delivered by

PORTER, J.: In an action to foreclose two real-estate mortgages plaintiff was given judgment for part of the amount claimed and a decree of foreclosure, but claims error in the proceedings, and appeals.

During her lifetime, Amelia Staab owned two quarter sections of farm land in Ellis county and certain town lots in Hays. On December 26, 1907, she borrowed from one Decker a thousand dollars and gave him a mortgage on one of the farms. The note and mortgage ran for five years. Amelia Staab died in 1908 and left a will giving a life estate in all her real property to her husband, Peter, with remainder over to their two sons, Jacob and Ambrose, share and share alike. The Staabs had met with financial and other difficulties; several civil judgments had been rendered against them which were liens on the real estate; a judgment had been rendered to prohibit them from selling or permitting liquor to be sold on some of the property in Hays; Peter and his son Jacob had been convicted of violating the prohibitory liquor law and were serving jail sentences with heavy fines against them. In these circumstances Ed F. Madden was employed to procure a loan on their real property for the purpose of paying the fines, costs, judgments against them, and debts.

A compromise was made with the county for the payment of a portion of the fines and the release of the father and son. Madden secured the loan, which amounted to $4,050, from P. D. Brown, the three Staabs, and Mary Staab, the wife of Jacob, executing their note to Brown due in one year, and a mortgage covering all the property formerly owned by Amelia Staab, including the quarter section previously mortgaged to Decker. The proceeds of the note was used to pay the various judgments and costs, several notes held by banks and others, and the expenses connected with securing the loan, including a commission to Madden of $400. A small balance remaining after these disbursements was paid over to Jacob Staab, and he gave Madden a receipt in full of all matters connected with the loan. The instruments were executed November 12, 1909. The only payment on the note was $950, which was made in August of the following year. In 1912 Brown bought the

Decker note and mortgage, and this action was brought November 4, 1915, to foreclose both mortgages.

The defendants, Peter, Jacob, and Mary Staab, answered, claiming that Madden had agreed to pay the Decker mortgage out of the $4,050, and to charge a commission of $75, and had also agreed to pay the cost of procuring an abstract and the notarial fees.

Ambrose Staab answered separately, setting up substantially the same defenses, and in addition alleged that he was a minor at the time he signed the note and mortgage; that no consideration passed from Brown to him, and that his signature was for the purpose of surety only; that he had never affirmed his action executing the note and mortgage, and then elected to disaffirm. Plaintiff replied by a general denial. The court called a jury to determine the facts.

At the trial Ambrose Staab was asked if he had a conversation with Madden after the note was given. His answer was:

"Well, when this hard winter came up, I think it was 1911 or 1912, or around there some time me and my father came in to borrow some money and went up to the bank and Bill says, 'All right, I will let you have the money but I want you to sign this $4,050 mortgage and note, now that you are 21 years old.' I says, 'I won't sign it.' He says, 'can't give you the money.'"

The jury made findings that Ambrose Staab was twenty years and seven days old at the time he signed the note and mortgage; that he received a consideration to the extent of $651.86; that he had never ratified the transaction after he became of age; and that he had disaffirmed it by refusing to renew the note in the fall of 1911. Their finding is that the payment of the Decker note and mortgage formed no part of the consideration for the execution of the mortgage to plaintiff; that neither Ambrose nor Peter, his father, authorized Jacob to make an agreement with Madden to pay him a commission of $400, nor to pay the expense of examining the title and the notary's fees. The agreement to pay Madden the commission of 10 percent was in writing and signed by Jacob alone, who receipted for the small balance remaining after the other disbursements of the proceeds.

The court made findings of its own, to the effect that Ambrose Staab had signed the note and mortgage before he was of age, and disaffirmed his action within a reasonable time after

he had attained his majority. The plaintiff was given a joint judgment against Peter and Jacob Staab for $3,581.12, and against Peter individually for $2,502.18, the two judgments to be a first-lien upon their interests in the lands; judgment for $1,173.49 of the aggregate amount was found to be due plaintiff from Ambrose Staab, which was declared a first lien upon his interest in the real estate. Instead of holding the Decker mortgage to be a first lien on the property described therein, it was lumped together with the subsequent mortgage which included other lands. The court ordered the interest of Ambrose sold separately to satisfy the separate judgment against him, the interest of Jacob sold separately to satisfy the judgment against him, and a separate sale of Peter's interest sold to satisfy the entire judgment. Aside from the principal errors complained of, it is claimed the court erred in making these orders respecting the sale; that the uncertainty as to the extent of title which a purchaser would obtain will deter bidders. It is further contended that the amount due on the Decker mortgage should have been declared a first lien on the land described therein, and that the order should have directed the land to be first sold to satisfy that lien.

In our view, the whole case turns upon the defense raised by Ambrose Staab. The court proceeded upon the theory that the evidence justified a finding that he had disaffirmed the contract after he came of age. If the trial court erred in this respect, the complications and difficulties presented by the order directing the manner of sale disappear.

Our statute with relation to the contract of an infant is different from those in many states. It declares that—

"A minor is bound not only by contracts for necessaries, but also by his other contracts, unless he disaffirms them within a reasonable time after he attains his majority, and restores to the other party all money or property received by him by virtue of the contract and remaining within his control at any time after his attaining his majority." (Gen. Stat. 1915, § 6358.)

The legislature saw fit to declare that a minor shall be bound by all his contracts, whether for necessaries or otherwise, unless, within a reasonable time after he arrives at majority, he shall disaffirm them, and that where there still remains in his control after he has reached his majority, money or property paid to him by virtue of his contract, he must restore that to

the other party.   The evidence and the findings show that Ambrose Staab received a valuable consideration for executing the note and mortgage, and it appears also from the evidence that part of the proceeds of the loan went to pay liens against his interest in the real estate.   The statute recognizes the common-law rule that where the money or property paid to him under the contract has been dissipated, restoration is not required of him.   (*Eureka Company v. Edwards,* 71 Ala. 248; *Reynolds v. McCurry et al.,* 100 Ill. 356.)   The law is well settled, however, that if liens or charges against the property belonging to him have been satisfied by the money or property received, and he retains the property, he is considered as having within his control the money or property that went to satisfy the liens.   Whether under our statute a restoration of the consideration, or an offer to restore it, is a condition precedent to a disaffirmance by an infant of his contract, need not be determined.   On the general question, see note to the case of *Craig v. Van Bebber,* 18 Am. St. Rep. 588, 594. The statute declares that he is bound unless he disaffirm within a reasonable time after he attains majority.   Much learning has been expended by the courts in determining what, in a given case, will constitute a reasonable time in which to disaffirm.   It is said to depend generally upon the circumstances of each case, and sometimes becomes a mixed question of fact and law and sometimes a mere question of law.   It has been held that the question of what constitutes a reasonable time is a question of fact for the determination of the court or jury, dependent upon the nature of the action.   (*Wiley v. Wilson,* 77 Ind. 596, and *Scott v. Buchanan et al.,* 11 Humph. [30 Tenn.] 468.)   The general rule is, that a reasonable time does not in any case extend beyond the period of the statute of limitations (*Nathans v. Arkwright,* 66 Ga. 179; 22 Cyc. 553), and the weight of authority seems to be that it is always safe for a court of equity to follow by analogy the statute of limitations.

The court was in error in holding that the act of Ambrose Staab in refusing to re-sign the note after he had arrived at majority constituted a disaffirmance of his contract.   While it is said not to be necessary that the disaffirmance shall be by an act or instrument of equal solemnity with the one sought to be avoided, or even that the disaffirmance be in writing, "it is

for an infant desiring to avoid his deed, mortgage, etc., to signify his desire, not only by refraining from any act of affirmance, but by performing some positive act of disaffirmance, which is of such a character as to clearly show his intention not to be bound by his act." (22 Cyc. 554.)

His mere refusal to comply with a request that he sign the note and mortgage after reaching his majority, was not a disaffirmance of the original contract, which the statute declares was already binding upon him; the statute says nothing about a reaffirmance of the contract. He was already bound by it unless he announced his election not to be bound. Of course, after reaching his majority, he could, without any statutory provision, have made a new contract by reëxecuting the instruments; but merely refusing a request to do an unnecessary thing in no wise impeached the validity of the original transaction.

It is well settled that in determining what constitutes a reasonable time in which a person who has executed an instrument during infancy shall disaffirm it much depends upon the particular circumstances of each case, but the authorities agree that the statute of limitations furnishes a safe rule in all cases, although under the circumstances of a particular case it may be that the right should be exercised within a shorter period.

After the disability was removed, Ambrose Staab had one year in which to bring an action to set aside the instruments. (Civ. Code, § 18, Gen. Stat. 1915, § 6908.) He attained his majority on November 5, 1910. His first act toward disaffirming the contract was when he filed his answer on February 1, 1916. He did not elect to disaffirm until more than five years after a cause of action accrued to him, and this cannot be held a reasonable time.

The evidence shows without dispute that the proceeds of the loan was paid out on claims, some of which were against the father and Jacob, some against all three of the Staabs, and others against Ambrose alone. The written agreement with Madden was signed by Jacob Staab alone. It read:

"Hays City, Kansas, Nov. 12, 1909. We hereby authorize W. J. Madden to procure a loan for us, sufficient to pay all judgments against us and all expenses and to pay to Ellis County and State of Kansas judgments and agree to pay W. J. Madden a commission of 10 per cent for

Brown v. Staab.

procuring the said loan for us and authorize the said W. J. Madden and request him to pay the said judgments for us."

The finding that the father and Ambrose had never authorized Jacob to sign the agreement to pay the commission for procuring the loan established no defense; it was not necessary for them to sign it. If one agreed to pay the commission and paid it, the others must be held to have ratified his action just as they ratified the other payments. If either of the three was not satisfied with the disbursements made by Madden, he should have complained, at least in August, 1910, when a payment of $950 was made on the note. The failure of all three to object to the manner in which the consideration was paid, until more than six years after the transaction, must be held to constitute a ratification and consent to the payments.

We think the various errors in the judgment and the orders of sale crept into the case because of the mistaken theory that Ambrose was released from full liability. Being equally liable on the note and owning the lands as tenants in common, no reason is seen why the three might not pledge the estate as an entirety by their joint mortgage. (27 Cyc. 1044, and see, also, *Hubbard v. Ogden,* 22 Kan. 363.) Each received individually part of the consideration, and each became surety for the others, and it is clear that the court should have ordered the real estate sold in its entirety. It is clear, too, that the mortgage executed by Amelia Staab in her lifetime is a first lien on the land described in the mortgage, and that land should have been ordered sold first to satisfy the $1,000 mortgage and interest. The plaintiff is entitled, of course, to recover taxes paid by him.

The judgment will be reversed and the cause remanded with directions to enter judgment for the plaintiff for the full amount of the notes with interest, less the partial payment, for foreclosure of the mortgages and for orders of sale as herein suggested.